# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30514

United States Court of Appeals
Fifth Circuit

**FILED**

July 23, 2014

Lyle W. Cayce
Clerk

RAINBOW GUN CLUB, INCORPORATED; LAKESIDE DEVELOPMENT COMPANY, INCORPORATED; DELLA MILLER BROUSSARD; REED JOSEPH MILLER; URSIN MILLER; ET AL,

Plaintiffs – Appellees

v.

DENBURY ONSHORE, L.L.C.; SPECTER EXPLORATION, INCORPORATED; SKH ENERGY PARTNERS, L.P.,

Defendants – Appellants

Appeals from the United States District Court
for the Western District of Louisiana

Before JOLLY, SMITH, and CLEMENT, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

A group of 167 individuals, trusts, and associations (collectively, "the Plaintiffs") entered into oil, gas, and mineral leases with Denbury Onshore, Specter Exploration, and SKH Energy (collectively, "Denbury"). The Plaintiffs later became unhappy with the outcome of their arrangement causing them to bring this suit in Louisiana state court, which alleged that Denbury breached its duty to act as a reasonable and prudent operator of the well that was drilled under these leases. Denbury removed the case to federal court asserting federal jurisdiction as a mass action under the Class Action Fairness Act ("CAFA"). CAFA, however, excludes federal jurisdiction over a state case that

is primarily local and arises from "an event or occurrence."  Holding that this was such a case, the district court remanded the case upon motion of the Plaintiffs.  Denbury petitioned this court for permission to appeal that determination, which we granted.  The sole issue presented is whether the Plaintiffs' claims arise from a single event or occurrence.  We hold that they do, and we AFFIRM.

I.

In the early 2000s, the Plaintiffs entered into leases with Denbury allowing Denbury to explore for oil, gas, and hydrocarbons.  In February 2003, Denbury began drilling Rainbow Gun Club Well No. 1 ("the Well").  The Well began producing hydrocarbons in July 2004 and was plugged and abandoned in July 2008.

In February 2013, the Plaintiffs brought this suit in Louisiana state court alleging that Denbury had breached its duty as a lessee under Louisiana law to act as a reasonable and prudent operator of the Well.  Specifically, the Plaintiffs allege that Denbury acted imprudently in allowing extraneous water to enter the gas reservoir, greatly reducing the productivity of the Well.  The Plaintiffs allege that this occurred because Denbury was negligent in several respects: (1) failing to heed methods of operation intended to avoid getting the drill pipe stuck; (2) failing to isolate the reservoir by properly cementing the well; (3) failing to properly cement the casing in a sidetrack well; (4) failing to heed increased differential pressures in the drilling of the original well; and (5) failing to correct the defective cement job.

Denbury filed a notice of removal, asserting that the case was a "mass action" under CAFA, *see* 28 U.S.C. § 1332(d)(11)(A)–(B),  and that the district court thus had jurisdiction.  The Plaintiffs filed a motion to remand, arguing that two exclusions to the definition of "mass action" applied to this case: (1) the local single event exclusion, and (2) the $75,000 jurisdictional amount

exclusion.  *See id.* § 1332(d)(11)(B)(i),(ii)(I).  Based on these exclusions, the Plaintiffs argued that the case should either be remanded completely, or that at least those claims that do not satisfy the $75,000 amount-in-controversy requirement should be remanded.

The case was assigned to a magistrate judge, who held that the claims arose from a single event or occurrence, and therefore the Plaintiffs' motion to remand must be granted.  *See* 28 U.S.C. § 636(b)(1)(A) (allowing district courts to "designate a magistrate judge to hear and determine" certain pretrial motions).  Specifically, the magistrate judge found it instructive that the Plaintiffs' claims for recovery arose from a single statute that imposed a duty on Denbury to act as a reasonably prudent operator of the well.  The magistrate judge concluded: "If this is so, then it suggests that the underlying matter is but one event or occurrence—the manner in which defendants drilled the well." The magistrate judge also emphasized that the exploration of the property "persisted uninterrupted over a defined period of time, and the allegations of negligence reflect a logical series of happenings."

Denbury challenged the magistrate judge's order before the district court.  *See id.* (allowing the district court to reconsider the magistrate judge's decision "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law").  The district court held that the magistrate's decision was not clearly erroneous or contrary to law.  Although recognizing that there must be a limit to what constitutes a single event or occurrence, the district court judge reasoned that "that limit may as often as not be supplied by the liberal application of common sense" because the ordinary meaning of the words of the statute do not require that the single event or occurrence occur at a single moment in time.  The district court thus denied Denbury's appeal of the magistrate judge's order and remanded the case to the state court.

No. 14-30514

Denbury then filed a motion before this court for permission to appeal the remand order under 28 U.S.C. § 1453(c), which we granted.

## II.

The sole issue raised on appeal is whether the district court erred in remanding the case on the basis that the local single event exclusion applies to the facts and circumstances of this particular case.[1]  We review a district court's remand order de novo.  *Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 637 (5th Cir. 2014).

CAFA provides for federal jurisdiction over "mass actions."  28 U.S.C. § 1332(d)(11)(A).  "[T]he term 'mass action' means any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact . . . ."  *Id.* at § 1332(d)(11)(B)(i).  The parties agree that this provision is satisfied.  Relevant to this case, however, the statute proceeds to circumscribe this definition.  "[T]he term 'mass action' shall not include any civil action in which . . . all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State."  *Id.* at § 1332(d)(11)(B)(ii),(ii)(I).  We refer to this provision as the "local single event exclusion."  The dispute is whether the claims in this case "arise from an event or occurrence" for the purposes of the exclusion.[2]  We begin our analysis of the

---

[1] As discussed, the Plaintiffs also argued to the district court that at least some of the claims must be remanded to state court because they do not satisfy the $75,000 amount in controversy requirement.  *See* 28 U.S.C. § 1332(d)(11)(B)(i).  The parties have not, however, presented any briefing on this issue, and because we hold that the local single event exclusion applies, requiring remand of the entire case, neither we nor the district court has any need to consider this alternative argument.

[2] Denbury has presented no argument referencing the second portion of the exclusion—i.e. that the event or occurrence "allegedly resulted in injuries in [Louisiana] or in States contiguous to [Louisiana]."  28 U.S.C. § 1332(d)(11)(B)(ii)(I).  Accordingly, Denbury

4

No. 14-30514

exclusion by looking to its text, its legislative history, and prior judicial decisions interpreting it. We then move to applying this analysis to the facts of this case.[3]

A.

In understanding the meaning of the exclusion, we begin with its text. *Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013). Because the statute does not define "an event or occurrence," we look to the ordinary meaning of those words. *Id.* ("As in any statutory construction case, we start, of course, with the statutory text, and proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." (internal quotation marks and alterations omitted)).

At the starting point, both parties agree that the exclusion contemplates a *single* event or occurrence. This agreement is based upon substantial judicial authority. *See Abraham v. St. Croix Renaissance Grp., L.L.L.P.,* 719 F.3d 270, 276–77 (3d Cir. 2013); *see also Adams v. Macon Cnty. Greyhound Park, Inc.*, 829 F. Supp. 2d 1127, 1136 (M.D. Ala. 2011) ("[T]he court cannot ignore the singular usage of 'event' and the singular usage of 'occurrence.'"). These authorities also recognize, however, that the meaning of "event" or "occurrence" is not necessarily constrained "to a specific incident with a fixed duration of time." *Abraham*, 719 F.3d at 277.

---

has waived this issue. *Askanase v. Fatjo*, 130 F.3d 657, 668 (5th Cir. 1997) ("All issues not briefed are waived.").

[3] The parties briefly dispute who has the burden of demonstrating the applicability or inapplicability of the exclusion. Generally, the party seeking removal has the burden of proving that the provisions of CAFA are satisfied. *See Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 84–85 (5th Cir. 2013). The party seeking remand, however, has the burden of proving the applicability of any exceptions to CAFA jurisdiction. *See Opelousas Gen. Hosp. Auth. v. FairPay Solutions, Inc.*, 655 F.3d 358, 360 (5th Cir. 2011). Because it does not affect the outcome, and because the parties have presented no argument on this issue other than summary assertions, we decline to address this dispute.

No. 14-30514

This reasoning is supported by the dictionary definitions—both popular and legal—of the terms. An "occurrence" is "[s]omething that happens, or takes place; specif., an accident, event, or continuing condition that results in personal injury or property damage." *Black's Law Dictionary* 1248 (10th ed. 2014). And the words "event" and "occurrence" can be understood as synonymous. *See* American Heritage Dictionary of the English Language 615 (5th ed. 2011) (defining "event" as "something that takes place, especially a significant occurrence"); *id.* at 1219 (defining "occurrence" as "the action, fact, or instance of occurring . . . something that takes place; an event or incident"); *see also Abraham*, 719 F.3d at 277 n.6. From these definitions, it is apparent that a singular event or occurrence, as contemplated by the local single event exclusion, need not be precisely confined to a moment in time. Nothing in either definition imposes a simultaneous time limitation, and *Black's Law Dictionary* explicitly defines "occurrence" as including a "continuing condition."

Thus, the plain text of the exclusion supports the Plaintiffs' view that the terms "event" and "occurrence" are not generally understood to apply only to incidents that occur at a discrete moment in time.

B.

This understanding is supported by the legislative history of CAFA. We are permitted to look to this legislative history only when the text of the statute is ambiguous. *See In re Hammers*, 988 F.2d 32, 34 (5th Cir. 1993) ("We may not look beyond [the words of the statute] when, taken as a whole, they are rational and unambiguous."). Here, at least some ambiguity exists in the scope of the terms "event" and "occurrence," as evidenced by the district court decisions cited by the parties. Accordingly, we consider the relevant legislative history to shed light on the intent of Congress in passing the local single event exclusion. *Id.* ("The sole purpose of statutory construction including, when

6

appropriate, a review of all available legislative history, is to ascertain the intent of the legislative authority.").

In one of its prior proposed forms, the local single event exclusion would have applied only to cases in which the plaintiffs' claims arose from a "single sudden accident." The version of CAFA that was enacted "expand[ed] the 'single sudden accident' exception so that federal jurisdiction shall not exist over mass actions in which all claims arise from any 'event or occurrence.'" 151 Cong. Rec. S1076-01 (statement of Senator Dodd summarizing compromise). This legislative history demonstrates that Congress considered explicitly adopting a view similar to what Denbury suggests here, constraining the exception to events that occur at a discrete moment in time. This proposal was rejected, however, and the exclusion expanded in the operative version of CAFA. This history thus supports the ordinary meaning of the terms in the exclusion and indicates that the exclusion applies to a single event or occurrence, but the event or occurrence need not be constrained to a discrete moment in time.

Denbury points to another piece of legislative history to supports its narrower reading of the exclusion. Specifically, Denbury cites the Senate Report discussing CAFA.[4] In discussing the local single event exclusion, the Senate Report states:

---

[4] The Plaintiffs argue that the Senate Report should not be considered as legislative history because it was released after CAFA was enacted—a position that has been accepted by some courts. *See Abraham*, 719 F.3d at 279 n.8 (doubting that the legislative history would aid in the interpretation of CAFA because it "was issued after CAFA was enacted"). Some courts, however, have held that the Senate Report may be considered because it was still before the Senate at the same time that CAFA was being considered. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1206 & n.50 (11th Cir. 2007) (looking to the legislative history of CAFA for aid in interpreting the statute after noting "[w]hile the report was issued ten days following CAFA's enactment, it was submitted to the Senate" while the Senate was considering the bill). We have previously looked to the Senate Report for insight into CAFA's meaning. *Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 639 (5th Cir. 2014). In short, we consider the Senate Report here, but remain cognizant of its shortcomings.

> The [local single event] exception would apply only to a truly local single event with no substantial interstate effects. The purpose of this exception was to allow cases involving environmental torts such as a chemical spill to remain in state court if both the event and the injuries were truly local, even though there are some out-of-state defendants. By contrast, this exception would not apply to a product liability or insurance case. The sale of a product to different people does not qualify as an event. And the alleged injuries in such a case would be spread out over more than one state (or contiguous states)—even if all the plaintiffs in the particular case come from one state.

S. Rep. 109-14, 47, *reprinted in* 2005 U.S.C.C.A.N. 3, 44–45. Denbury points to the report's discussion of environmental torts as evidence that the exclusion was not intended to apply to the claims here, which arise out of the contracts between the Plaintiffs and Denbury.

We are not convinced that the Senate Report provides relevant insight into the reach of the exclusion as applied to this case. First, even accepting that the purpose of the exclusion was specifically to keep local environmental torts out of federal court, there is no reason that the exclusion cannot also apply to other cases if those cases fit within its language. Importantly, the text of the exclusion speaks to "any civil action" involving claims arising from an event or occurrence. 28 U.S.C. § 1332 (d)(11)(B)(ii)(I). In the light of this text, we cannot read the exclusion to apply only to a specific genre of claims. Second, even looking at the examples that the Senate Report cites, the Plaintiffs' claims are more akin to an environmental tort than a product liability or insurance action. Like an environmental tort, these claims arise from Denbury's allegedly negligent operation of the Well. The only distinction between this case and an environmental tort is the source of the damages—the Plaintiffs' claims of financial harm due to lost productivity from the Well as opposed to a claim for property damage from an explosion or spill from the Well. Thus, to

8

No. 14-30514

the extent that we consider the Senate Report, it does not support Denbury's interpretation of the statute.

C.

Lastly, we discuss two cases from other circuits that have addressed the scope of the local single event exclusion and have been cited to us by the respective parties. First, the Third Circuit has adopted an interpretation of "arise from an event or occurrence" that supports the Plaintiffs' argument. In *Abraham*, the plaintiffs brought a suit against the operator of a refinery, alleging that the refinery had been continuously releasing hazardous substances for about a decade. *Abraham*, 719 F.3d at 273. Despite the long time frame, the court held that the claims did "arise from an event or occurrence" because "the words 'event' and 'occurrence' do not commonly or necessarily refer in every instance to what transpired at an isolated moment in time, [so] there is no reason for us to conclude that Congress intended to limit the phrase 'event or occurrence' . . . in this fashion." *Id.* at 277. In its clearest explication of a rule, the court held:

> [W]here the record demonstrates circumstances that share some commonality and persist over a period of time, these can constitute 'an event or occurrence' for purposes of the exclusion in § 1332(d)(11)(B)(ii)(I). In short, treating a continuing set of circumstances collectively as an "event or occurrence" for purposes of the [local single event] exclusion is consistent with the ordinary usage of these words, which do not necessarily have a temporal limitation. Giving the words "event" or "occurrence" their ordinary meaning is not at odds with the purpose of the statutory scheme of CAFA. Congress clearly contemplated that some mass actions are better suited to adjudication by the state courts in which they originated.

*Id.*

Against this broader interpretation, the Ninth Circuit has arguably adopted a position closer to Denbury's advocacy. In *Nevada v. Bank of Am.*

9

*Corp.*, the Ninth Circuit rejected an argument that the local single event exclusion applied to a *parens patriae* action against Bank of America for misleading consumers in various ways.  672 F.3d 661, 665 (9th Cir. 2012).  The court held that the exclusion only applies "where all claims arise from a *single* event or occurrence." *Id.* at 668 (emphasis in original).  The court went on to state that "[c]ourts have consistently construed the 'event or occurrence' language to apply only in cases involving a single event or occurrence, such as an environmental accident, that gives rise to the claims of all plaintiffs." *Id.* (internal quotation marks omitted).  Applying the language in this way, the court held that the exclusion could not apply to a case involving "widespread fraud in thousands of borrower interactions." *Id.*

*Abraham* provides obvious support for the Plaintiffs' position that the local single event exclusion can apply in situations beyond events or occurrences that happen at a discrete moment in time.  The Ninth Circuit's decision is more ambiguous in its agreement that continuous conduct may be perceived as a single event, but it does not upset our analysis for two reasons. First, it is unclear to what extent the Ninth Circuit applied a narrower reading of the exception that would support the argument Denbury makes.  The decision only (1) recognizes that the exclusion applies to a single event or occurrence; (2) cites an environmental tort an as example that satisfies this language; and (3) holds that the exclusion cannot apply to the case before it, involving thousands of separate transactions. *Id.*  So the decision's support of Denbury's position is equivocal.  And second, to the extent that the Ninth Circuit did adopt that narrower view, its limited analysis does not overcome the text of the statute, the legislative history, and the unambiguous and compelling analysis of the Third Circuit in *Abraham*.

In sum, the text of the statute, its legislative history, and other case law interpreting the local single event exclusion guide us to a single conclusion:

No. 14-30514

Although the exclusion certainly applies in cases in which the single event or occurrence happens at a discrete moment in time, the single event or occurrence may also be constituted by a pattern of conduct in which the pattern is consistent in leading to a single focused event that culminates in the basis of the asserted liability.

### III.

Although Denbury disagrees with this interpretation, it argues that even if this is a proper interpretation of the exclusion, this case still does not fall within that reasoning.  The Plaintiffs point to the failure of the Well as the single event or occurrence that their claims arise from. Denbury argues that the claims do not arise from a single event or occurrence, even under the broader interpretation of the exclusion that we have provided above, for two reasons, which we now discuss.

### A.

First, Denbury argues that the claims actually arise from a number of different "events," namely, the five separate incidents of negligence that the Plaintiffs alleged in their complaint.  In Denbury's view, these are the actual independent events that give rise to the Plaintiffs' claims.  The Plaintiffs argue that Denbury conflates two different concepts: (1) the event or occurrence from which the claims arise; and (2) the underlying actions that lead to that event or occurrence.  The multiple acts of negligence that the Plaintiffs allege fall into category (2); they are the actions that give causal substance to the event—the failure of the Well from which the Plaintiffs' claims arise.

The Plaintiffs provide an analogy to the Deepwater Horizon spill that is helpful in illuminating this distinction.  Both parties agree that the Deepwater Horizon spill is "an event or occurrence" within the meaning of the exclusion.  Just as in our case, the Deepwater Horizon spill was the event that resulted from a number of individual negligent acts related to each other, all of which

came together to culminate in the single event. This is precisely what we have here. The Plaintiffs allege that Denbury performed several negligent acts, and the result of those acts was a single occurrence—the failure of the Well. And just as in the Deepwater Horizon example, the Plaintiffs' claims do not arise from any one of the several alleged acts of negligence, but from the single occurrence that resulted from the collective related acts. Thus, we cannot embrace Denbury's argument that the Plaintiffs' claims arise from multiple events or occurrences because the Plaintiffs alleged several negligent acts.

B.

Denbury also borrows the Deepwater Horizon analogy to illustrate its second argument against the application of the exclusion. Denbury argues that in the Deepwater Horizon example, there is no dispute that the event or occurrence on which the claims are based actually occurred—i.e. nobody could dispute that there was an explosion and spill. Conversely, Denbury argues that the event or occurrence in this case—the failure of the Well—is disputed because Denbury contests whether the Well failed at all. Basically, Denbury asserts that the exclusion cannot be satisfied by an alleged event or occurrence.

Again, we are unpersuaded by this argument because it is only a matter of semantics. Rather than identifying the failure of the Well as the event or occurrence, the depletion of the Well or the untimely (in the Plaintiffs' view) cessation of production of the Well could also be treated as the event or occurrence. In both cases, the event or occurrence would be undisputed—that is, both parties agree that the Well has been depleted and is no longer producing. The parties disagree over the cause of this occurrence, but this argument will be addressed in the merits of the Plaintiffs' suit in the proper court. In short, we accept that the Well failed from the Plaintiffs' perspective and thus hold that the failure of the Well can be treated as an event or

occurrence, but we of course express no opinion on whether the Well "failed" in the sense that the merits of the Plaintiffs' suit alleges.

C.

Irrespective of whether we denominate the event or occurrence as the depletion or failure of the Well, the semantics of the exclusion are satisfied based on the analysis above, specifically the ordinary meaning of the statute and the analysis from the Third Circuit. The failure of the Well certainly fits with the definition of "occurrence." *See Black's Law Dictionary* 1248 (10th ed. 2014) (defining "occurrence" in part as a "continuing condition that results in personal injury or property damage"). Similarly, the alleged negligent acts in the operation of the Well that led to its failure are the sort of "circumstances that share some commonality and persist over a period of time" that the Third Circuit held satisfied the exclusion. *Abraham*, 719 F.3d at 277. And even though it may be impossible to define an exact moment at which the failure occurred—e.g. before, upon, or after the capping of the Well—this does not change our conclusion because we find nothing in the definitions of the terms that requires that an event or occurrence must happen at an identifiable moment in time.

In sum, we hold that here there was an ongoing pattern of conduct that was contextually connected, which when completed created one event consistent with the ordinary understanding and the legislative history of the exclusion. Accordingly, we hold that the failure of the Well constitutes the "event or occurrence" from which the claims of the Plaintiffs arise.

IV.

For these reasons, the judgment of the district court is

AFFIRMED.