

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JOCELYN ALLEN; LAWRENCE J.
ALLEN; VIVIAN LYNN ALLEN;
CAREN BARNES; EMERY BLESSING;
HORACE BLINER; ROBERT A.
BLINER; JASON BOGART; BRENDA
BRAMMER; BRETNEY A.
BROWNFIELD; DONALD N.
CAMPBELL; DEBORAH JEAN
CETTOLIN; CAROLE DENISE
COGGIN; ROBERT ALLEN COGGIN;
ANGELA COMSTOCK; TIMOTHY
EUGENE CONNOR; CHRISTINE R.
COUNCILMAN; DARYL CRAWFORD;
SHAWN CREED-WOOLERY; ANITA
DECKER; DANIEL DECKER; KERRI
DECKER; SHAWN DECKER; DANIEL
ANDREW DOLLOFF; JACOB
DOLLOFF; TONI RAE DOLLOFF;
JEFFREY DOSCH; KARRIE DOSCH;
ALVINE DRAYTON; PATRICIA ANN
DUKE; JUANITA DUPONT; DONALD
WARREN EDWARDS; TAMMY
ELSNER; MICHAEL PATRICK
ETHIER; FAY FARRINGTON; LARRY
D. FORD, Sr.; KENNETH MARK
FOREMAN; SHERRI LEE FOREMAN;
MICHAEL GESE; AIMEE GREEN;
JOSH GREEN; LEE LYNN HARDY;
LISA ANN HARDY; BARRY CURTIS
HARMON, II; NICOLE HARMON;
DONALD R. HAUPT; KARI LYN
HERNANDEZ; RONALD A. HOLT;

No. 15-35162

D.C. No. 2:14-cv-00596-RSM

OPINION

BRIAN JONES; MIKISHA D. JONES; TATIANA JONES; PHYLLIS KAIN; ROBERT KENNICOTT; ANDREY KINAKH; TONY KINGSADA; MICHELLE KLUSMEYER; SONJA LAPPING; BRITTNEY LYNN LICKEY; ROBIN LINDY; WAYNE LINDY; ASHLEY LISENBY; PAULLET LITTLEFIELD; DEIDRE LORENZ; COURTNEY MACISAAC; PAUL MALAVOTTE; RANDOLPH MALILONG; ANNISSA MANOLOVITZ; LISA MARTIN; MARIE MCASKILL; JILL A. MENTZER; JOHN L. MENTZER; VICKI L. MILLS; KAREN MILLSAP; TERRENCE MILLSAP; KYLIE MOREFIELD; ELIZABETH MORGAN; TARA MOTT; CECILY NEILSEN; ANTHONY B. NOCERA; DIANE C. NOCERA; JESSICA PARKER; RICHARD PARKER; PATRICIA PLATTNER; MIKE RAMIREZ; LUDMILLA REDKA; BRIAN REITZ; KATHLEEN RISMOEN; MATTHEW MONTGOMERY ROBERTS; LURA ELAINE ROBERTSON; JANENE M. ROLLINS; CLAUDE ROUGHT; DAN RUDOLPH; DEBORAH A. RYAN; RICHARD R. RYAN; STEVE SANBORN; MICHAEL C. SCOTT; DAVEENE KIM SEARS; GERALD L. SEARS; DARRON SHOOK; LISA SHOOK; STACIE SIPPO; HAROLD A. SPONBERG; PENNY J. SPONBERG; TRENT B. TESTERMAN; BERNADETTE J. TRANHOLT; ROBIN L. TRANHOLT; JEFFREY A. TREKLA;

KAREN R. TREKLA; JESSICA A. VAUGHN; GABRIEL WARREN; MAX WERDEN; TINA WERDEN; STACY WILEY; ANTHONY WILLIAMS; CINDA J. ZITTERICH; RICKY L. ZITTERICH,

        Plaintiffs - Appellees,

v.

THE BOEING COMPANY, a Delaware Corporation,

        Defendant - Appellant,

  And

BOEING COMMERCIAL AIRPLANES; LANDAU ASSOCIATES INC, a Washington Corporation; DOES 1-50, inclusive,

        Defendants.

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted April 6, 2015
Seattle, Washington

Before: HAWKINS, RAWLINSON, and CALLAHAN, Circuit Judges.

CALLAHAN, Circuit Judge:

Jocelyn Allen and others ( Plaintiffs) sued The Boeing Company (Boeing) and Landau Associates (Landau) in a Washington state court alleging that for over forty years Boeing released toxins into the groundwater around its facility in Auburn, Washington, and that for over a decade Landau had been negligent in its investigation and remediation of the pollution. Boeing removed the case to the District Court for the Western District of Washington claiming federal jurisdiction based on diversity and the Class Action Fairness Act (CAFA). The district court remanded the case to state court holding that (1) Landau was not fraudulently joined, and thus there was not complete diversity, and (2) Plaintiffs' action came within the local single event exception to CAFA federal jurisdiction, 28 U.S.C. § 1332(d)(11)(B)(ii)(I). Boeing sought and was granted leave to appeal pursuant to 28 U.S.C. § 1453(c). We hold that Plaintiffs' action does not come within the local single event exception to CAFA, and that, therefore, the district court has federal jurisdiction under CAFA. We affirm the district court's determination that Boeing failed to show that Landau was fraudulently joined. We refer Plaintiffs' assertion that their action falls within the local controversy exception to federal jurisdiction under CAFA, 28 U.S.C. § 1332(d)(4)(A), to the district court for consideration in the first instance.

4

# I. Background

From the 1960s to the 1990s, Boeing used solvents that allegedly contained hazardous chemicals in its aircraft parts manufacturing plant in Auburn, Washington. In 1987, the Washington State Department of Ecology (Department of Ecology) initiated requirements for the treatment, storage and handling of hazardous materials. In 2002, Boeing entered into an agreement with the Department of Ecology to investigate and remediate releases of hazardous substances from its manufacturing plant and retained Landau to conduct the investigation and remediation.

In November 2013, Plaintiffs filed an action against Boeing and Landau in King County Superior Court, Washington. Plaintiffs alleged that they "incurred property damages as a result of groundwater contamination by hazardous chemicals at and around" Boeing's Auburn plant "from the 1960s to the present." They further alleged "that Boeing and its environmental-remediation contractor, Landau, are liable for negligently investigating, remediating, and cleaning up the contamination and for failing to warn Plaintiffs of the contamination." Based on these allegations, Plaintiffs asserted state law claims of negligence, nuisance, and trespass against Boeing and negligence against Landau.

In April 2014, Boeing removed the action to the District Court for the Western District of Washington. It asserted two independent bases for federal jurisdiction: diversity jurisdiction and CAFA. With respect to diversity jurisdiction, Boeing alleged that Landau had been fraudulently joined to defeat complete diversity.

On September 23, 2014, the district court held that Landau had not been fraudulently joined, but that the action fell within the local single event exception to federal jurisdiction under CAFA, and remanded the case to the state court.

## II. The Local Single Event Exception

### A. Standard of Review

Boeing filed a petition pursuant to 28 U.S.C. § 1453(c)(1) for leave to appeal, which we subsequently granted. We review the remand order de novo. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1196 (9th Cir. 2015).

A defendant generally may remove a civil action if a federal district court would have original jurisdiction over the action. 28 U.S.C. § 1441(a). The Supreme Court has clarified that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). This clarification reinforces our holding that "the objecting party

6

bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B)." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007).[1]

B.  Federal Jurisdiction

Boeing alleged federal jurisdiction based on diversity, 28 U.S.C. § 1332(a)(1), and on the ground that Plaintiffs' action was a "mass action" pursuant to CAFA, § 1332(d)(11)(B).  A "mass action" is defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)."  28 U.S.C. § 1332(d)(11)(B)(i).  There is no real question that Plaintiffs' action fits within this definition.

However, § 1332(d)(11)(B)(ii) sets forth certain exceptions to CAFA jurisdiction.  In particular, subsection (d)(11)(B)(ii)(I) provides that the term "mass action" does not include a civil action in which "all of the claims in the action arise

---

[1]  Our position is consistent with the perspectives of the Fifth, Seventh, and Eleventh Circuits.  *See Frazier v. Pioneer Amer. LLC*, 455 F.3d 542, 546 (5th Cir. 2006); *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 680 (7th Cir. 2006); and *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006).

from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State." It is the district court's holding that Plaintiffs' action falls within this local single event exception to federal jurisdiction under CAFA that commands our attention.

## C. Case law

We addressed the local event exception in *Nevada v. Bank of America Corp.*, 672 F.3d 661 (9th Cir. 2012). In that case, Nevada brought a *parens patriae* action alleging that "Bank of America misled Nevada consumers about the terms and operation of its home mortgage modification and foreclosure processes, in violation of [Nevada law]." *Id*. at 664. In the process of concluding that the *parens patriae* action was not a "mass action," *id.* at 672, we stated:

> The district court ruled that this action does not qualify as a "mass action" under the "event or occurrence" exclusion in CAFA, which expressly provides that the term "mass action" excludes any civil action in which "all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State . . . ." 28 U.S.C. § 1332(d)(11)(B)(ii)(I). The district court reasoned that it lacked mass action jurisdiction because "the claims all allegedly arise from activity in Nevada and all injuries allegedly resulted in Nevada." This was a misapplication of the "event or occurrence" exclusion.
>
> The "event or occurrence" exclusion applies only where all claims arise from a *single* event or occurrence. "[C]ourts have consistently construed the 'event or occurrence' language to apply only in cases involving a single event or occurrence, such as an environmental

8

accident, that gives rise to the claims of all plaintiffs." *Lafalier v. Cinnabar Serv. Co., Inc.*, 2010 WL 1486900, at *4 (N.D. Okla. Apr. 13, 2010). Moreover, the legislative history of CAFA supports this interpretation, making clear that the exception was intended to apply "only to a truly local single event with no substantial interstate effects" in order to "allow cases involving environmental torts such as a chemical spill to remain in state court if both the event and the injuries were truly local." S. Rep. No. 109–14, at 41 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 44. The Complaint in this case alleges widespread fraud in thousands of borrower interactions, and thus this action does not come within the "event or occurrence" exclusion.

*Id*. at 668.

The district court, however, thought that this action against Boeing was more similar to *Abraham v. St. Croix Renaissance Group, L.L.L.P.*, 719 F.3d 270 (3d Cir. 2013). **ER 4.** In *Abraham*, plaintiffs alleged that defendants purchased property knowing that bauxite and piles of red mud on the property had the propensity to disperse in wind, causing injuring plaintiffs and their property. *Id*. at 273. The defendants removed the case to district court. *Id*. The plaintiffs argued that removal was improper because their action fell within the local single event exception. *Id*. The defendants responded that:

the exclusion for "an event or occurrence" did not apply because it requires a single incident and the plaintiffs' complaint alleged that "there were multiple events and occurrences over many years." It emphasized that the exclusion requires that to avoid removal there had to have been just "an event or occurrence"—a "single" event or occurrence.

9

*Id*. at 274. The Third Circuit rejected the defendant's perspective and held that the

action fell within the local single event exception, explaining:

> As the District Court explained, the "word event in our view is not always confined to a discrete happening that occurs over a short time span such as a fire, explosion, hurricane, or chemical spill. For example, one can speak of the Civil War as a defining event in American history, even though it took place over a four-year period and involved many battles." The Court's construction of the word is consistent with the word's common usage. Important events in history are not always limited to discrete incidents that happened at a specific and precise moment in time.
>
> As further support for this construction, we note that the plain text of the exclusion and the statutory scheme do not delimit the words "event or occurrence" to a specific incident with a fixed duration of time. Because the words "event" and "occurrence" do not commonly or necessarily refer in every instance to what transpired at an isolated moment in time, there is no reason for us to conclude that Congress intended to limit the phrase "event or occurrence" in § 1332(d)(11)(B)(ii)(I) in this fashion. Accordingly, where the record demonstrates circumstances that share some commonality and persist over a period of time, these can constitute "an event or occurrence" for purposes of the exclusion in § 1332(d)(11)(B)(ii)(I).
>
> In short, treating a continuing set of circumstances collectively as an "event or occurrence" for purposes of the mass-action exclusion is consistent with the ordinary usage of these words, which do not necessarily have a temporal limitation. Giving the words "event" or "occurrence" their ordinary meaning is not at odds with the purpose of the statutory scheme of CAFA. Congress clearly contemplated that some mass actions are better suited to adjudication by the state courts in which they originated. This intent is evident in both the "event or occurrence" exclusion for mass actions, as well as the local-controversy and home-state exceptions in § 1332(d)(4)(A) and (B) for class actions. These provisions assure that aggregate actions

with substantial ties to a particular state remain in the courts of that state.

719 F.3d at 277–78 (internal citations omitted).

D. Analysis

1. *The exception is limited to a single happening.*

We must consider whether the district court's determination that Plaintiffs' action comes within the local single event exception based on the Third Circuit's opinion in *Abraham*, should be, or can be, reconciled with our opinion in *Nevada*. With due respect to the Third Circuit, we do not agree with its definition of "event or occurrence" as that term is used in CAFA. We find that such a broad definition renders portions of CAFA redundant and is not supported by legislative history. Furthermore, even if "event or occurrence" could be interpreted to cover one continuing activity or tort, Plaintiffs in this case seek relief from at least two distinct activities.

Initially, we note that to the extent that the definition of "event or occurrence" in *Abraham* conflicts with the definition in *Nevada*, we are bound by our opinion in *Nevada*. *Rodriguez v. AT & T Mobility Services LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (holding that "we are bound by prior panel decisions . . . and can only reexamine them when their 'reasoning or theory' of that authority is

'clearly irreconcilable' with the reasoning or theory of intervening higher

authority").

However, even were we free to interpret the phrase as we would, we would

not adopt the Third Circuit's approach.  In context, it is clear that the phrase "event

or occurrence" was not intended to cover something like the Civil War.  The

common definition of "event" is "something (especially something important or

notable) that happens"[2] or "a thing that happens, esp. one of importance."[3]

Similarly, the common definition of "occurrence" is "something that happens"[4] or

"an incident or event."[5]  This is not to say that in recounting the history of the

United States, the Civil War may not fairly be described as an "event."  But, in the

context of determining whether a legal cause of action concerns an "event" or an

"occurrence" for purposes of CAFA, the terms most commonly and reasonably

---

[2]      Merriam-Webster, http://www.merriam-webster.com/dictionary/event (last visited Apr. 3, 2015).

[3]      The New Oxford American Dictionary 588 (Elizabeth J. Jewell & Frank Abate, eds., 2001).

[4]      Merriam-Webster, http://www.merriam-webster.com/dictionary/occurrence (last visited Apr. 3, 2015).

[5]      The New Oxford American Dictionary 1184 (Elizabeth J. Jewell & Frank Abate, eds., 2001).

refer to a singular happening. There is no reason to think that Congress intended anything else.

A careful parsing of CAFA reveals no support for a broader reading of the term. Instead, the phrase "event or occurrence" in 28 U.S.C. § (d)(11)(B)(ii)(I) is used to limit the types of mass actions for which there is not federal jurisdiction. A civil action is exempt only if "all of the claims . . . arise from an event or occurrence" and the resulting alleged injuries occurred in a single state or in contiguous states. *Id*. In other words, the statute requires that the district court review the allegations of a complaint to determine whether all the claims are based on a singular happening.

Indeed, giving "event or occurrence" a broader definition is inconsistent with the overall structure of CAFA. CAFA contains a number of detailed

exceptions to its grant of federal jurisdiction.[6]  Principal among these is the local

controversy exception, 28 U.S.C. § 1332(d)(4)(A).[7]  Giving "event or occurrence"

---

[6]        *See*, *e.g.*, 28 U.S.C. § 1332(d)(5)(A) (denying jurisdiction where "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief"); and § 1332(d)(11)(B)(ii)(III) (excluding from the definition of mass action any case where "all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action").  In addition, § 1332(d)(3) provides that a district court "may, in the interest of justice and looking at the totality of the circumstance," decline to exercise federal jurisdiction under CAFA over certain class actions "in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed."

[7]        28 U.S.C. § 1332(d)(4)(A) provides:

A district court shall decline to exercise jurisdiction under paragraph (2)--
(A)(i) over a class action in which--
        (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
        (II) at least 1 defendant is a defendant--
                (aa) from whom significant relief is sought by members of the plaintiff class;
                (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
                (cc) who is a citizen of the State in which the action was originally filed; and
        (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
(ii) during the 3-year period preceding the filing of that class action, no other

(continued...)

14

a broad definition tends to obfuscate the boundaries between the exceptions. For example, if the single happening requirement is read out of the local event exception (§ 1332(d)(11)(B)(ii)(I)), then the criteria for the local controversy exception (§ 1332(d)(4)(A)) become redundant (at least where the alleged spill does not cross a state line). There would be no need to consider the local controversy exception's criteria, such as whether at least two-thirds of the members of a class were citizens of the State or at least one significant defendant is a citizen of the State, if the local single event exception applied to all "circumstances that share some commonality and persist over a period of time." *See Abraham*, 719 F.3d at 277.

The singular nature of the term is also supported by legislative history. The Senate Committee Report includes the following passage:

> The Committee finds that mass actions are simply class actions in disguise. They involve a lot of people who want their claims adjudicated together and they often result in the same abuses as class actions. In fact, sometimes the abuses are even worse because the lawyers seek to join claims that have little to do with each other and confuse a jury into awarding millions of dollars to individuals who have suffered no real injury.

---

[7](...continued)
class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

> For these reasons, it is the Committee's intent that the exceptions to this provision be interpreted strictly by federal courts. *The first exception would apply only to a truly local single event with no substantial interstate effects.* The purpose of this exception was to allow cases involving environmental torts such as a chemical spill to remain in state court if both the event and the injuries were truly local, even though there are some out-of-state defendants.

S. Rep. No. 109-14, at 7 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 44.[8] This passage reflects that the Senate sought to exclude from the exception cases where the plaintiffs sought to "join claims that have little to do with each other" and to limit the exception to cases that arise out of "a truly local single event with no substantial interstate effects." Moreover, the Report states that the exception is to "be interpreted strictly by federal courts." The concluding quoted sentence does not alter this reading because, rather than expand the exception to apply to all cases involving environmental torts, the Report states that the exception applies to a

---

[8] The suggestion in *Tanoh v. Dow Chemical Co.*, 561 F.3d 945, 954 n.5 (9th Cir. 2009), and other cases, that the Senate Committee Report provided minimal guidance because it was not printed until ten days after CAFA's passage, was implicitly rebutted by the Supreme Court last year when, in *Dart*, it cited to the Report. 135 S. Ct. at 554. *See also Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1206 n.50 (11th Cir. 2007) ("While the report was issued ten days following CAFA's enactment, it was submitted to the Senate on February 3, 2006—while that body was considering the bill.").

"chemical spill" not chemical spills.[9] Thus, the legislative history draws the line between a one-time chemical spill and a continuing course of pollution, contamination, or conduct that occurs over a period of years. For example, if an oil refinery has an accident and, as a result, releases toxic materials into the air or water, a suit against the refinery based on the accidental release of contaminants would fall within the exception, but an action against the refinery alleging a continuous course of pollution over a number of years would not.

Furthermore, the admonition in the Report that exceptions to CAFA are to be strictly interpreted has been endorsed by the courts. In *Dart*, the Supreme Court noted that there was no presumption against removal jurisdiction and that CAFA should be read "with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." 135 S. Ct. at 554 (quoting S. Rep. No. 109-14, at 43). *See also Jordan v. Nationstar Mort. LLC*, – F.3d – , 2015 WL 1447217, at * 5 (9th Cir. Apr. 1, 2015) (noting the Supreme Court's reference to Congress's overall intent to strongly favor the exercise of federal diversity jurisdiction over class actions). The Supreme Court's opinion in *Dart* reinforces our holding in *Serrano*, 478 F.3d at 1024, that "the objecting party

---

[9] Reading this sentence to expand the exception to cover all instances where "both the events and injuries were truly local" is precisely the reading we rejected in *Nevada*, 672 F.3d at 668.

17

bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B)."

In sum, even accepting that the meaning of "event or occurrence" as used in § 1332(d)(11)(B)(ii)(I) is ambiguous, we are constrained to read it as referring to a single happening because this definition: (1) reflects the most common understanding of the terms; (2) is consistent with, and furthers the purposes of CAFA; (3) conforms to the judicially endorsed admonition in CAFA that exceptions to federal jurisdiction under CAFA are to be strictly construed; and (4) is consistent with, if not compelled by, our opinion in *Nevada*, 672 F.3d 661.

    2. *Plaintiffs' action does not come within even a broad interpretation of event or occurrence.*

Even if the single local event exception were to be read as covering some allegations of a continuing nature, Plaintiffs' action would not come within such an expanded definition. The Fifth Circuit adopted such an approach in *Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405 (5th Cir. 2014). In that case, the plaintiffs brought an action in Louisiana state court alleging that Denbury "breached its duty to act as a reasonable and prudent operator of the well that was drilled under [their] leases." *Id*. at 407. In other words, the well had been depleted and was no longer producing. *Id*. at 413. Denbury removed the case to federal

court under CAFA, but the district court remanded it to state court, finding that it came within the local single event exclusion. *Id*. at 408. On Denbury's appeal, the Fifth Circuit concluded: "[a]lthough the exclusion certainly applies in cases in which the single event or occurrence happens at a discrete moment in time, the single event or occurrence may also be constituted by a pattern of conduct in which the pattern is consistent in leading to a single focused event that culminates in the basis of the asserted liability." *Id*. at 412.

The Fifth Circuit's approach is neither helpful to Plaintiffs nor necessarily contrary to *Nevada*, 672 F.3d 661. The case before the Fifth Circuit concerned a single "event or occurrence," the failure of a well, although the precise timing of the failure was not clear. Referring by analogy to the Deepwater Horizon spill, the Fifth Circuit noted that the spill "resulted from a number of individual negligent acts related to each other, all of which came together to culminate in the single event." *Id*. at 413. Similarly, although the alleged underlying acts in *Rainbow Gun Club* may have occurred over a period of time, they resulted in a single happening, the failure of the well, which produced the alleged injuries to the plaintiffs.

In contrast, here Plaintiffs do not allege a single event or occurrence resulting from Boeing's or Landau's acts. Rather, Boeing is alleged to be responsible for the leeching of hazardous materials over forty years and Landau is

19

alleged to be responsible for negligently failing to remediate the pollution (but not to have caused the pollution) for over a decade. Thus, even under the Fifth Circuit's approach to the local single event exception, Plaintiffs have not alleged the requisite singular happening. Perhaps, under the Fifth Circuit's approach, Plaintiffs' action would fit within the local single event exception if they had sued only Boeing for its alleged pollution, or only Landau for its alleged negligence. However, Plaintiffs' action asserts claims against two distinct defendants for at least two separate activities.

We adhere to our decision in *Nevada*, 672 F.3d 661, that the local single event exception is limited to a "local single event," but, in this case, even if we were to accept the Fifth Circuit's approach that this term could include a continuous pattern that led to a single event, Plaintiffs' action would not come within that definition because Plaintiffs challenge several distinct actions on the part of Boeing and Landau.

### III. Fraudulent Joinder

As discussed below, unless another CAFA exception applies, our determination that the Plaintiffs' action does not come within the local single event exception establishes federal jurisdiction under CAFA, and thus negates the need for Boeing to establish complete diversity based on Landau's alleged fraudulent

20

joinder. Nonetheless, we address Boeing's allegation of fraudulent joinder because it is relevant to another possibly applicable CAFA exception, the local controversy exception, which we refer to the district court. *See supra.*

### A. Standard of Review

In *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009), we indicated that a denial of a motion to remand to state court is reviewed de novo. We noted that a joinder is fraudulent when a plaintiff's failure to state a cause of action against the resident defendant is obvious according to the applicable state law. *Id*. at 1043. Agreeing with the Fifth Circuit, we held that:

> ". . . a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant" and reasoned that "the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." [*Smallwood v. Illinois Central R. R.* Co., 385 F.3d 568] at 573–74 [(5th Cir. 2004) (en banc)]. The court further stated that "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Id.* at 574.

*Id*. at 1044. We also agreed with the Eleventh Circuit, that "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F.3d at 1046 (quoting *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) (per curiam)).

21

B. The contentions

Boeing argues that Plaintiffs' complaint contains only conclusory allegations that do not suffice to satisfy the requirements of Federal Rule of Civil Procedure 12(b)(6). Although the complaint alleged that Landau failed to act reasonably in investigating, evaluating, remediating, eliminating, and cleaning-up the hazardous substances, and failed to warn Plaintiffs about the presence of hazardous substances, Boeing claims that the complaint contains "not a single allegation tying any duty owed by Landau to any of these 116 Plaintiffs." Boeing argues that: (1) Plaintiffs were not parties to the contract between Boeing and Landau; (2) the parties to the contract did not intend to create an obligation to third parties: and (3) the parties, in fact, expressly disclaimed that there were any third party beneficiaries. Boeing further asserts that Plaintiffs' claims fail because "Landau was acting under the direction" of the Department of Ecology, "a government agency that oversaw and supervised each step of Landau's work."

Plaintiffs respond that under Washington state law engineering firms owe a duty to third parties, even without privity, that Plaintiffs have alleged that Landau owed them a duty of care, and that they are "third party beneficiaries of Defendants' contract despite their attempts to disclaim such benefits."

22

The district court, citing *Warner v. Design & Build Homes, Inc.*, 114 P.3d 664, 670 (Wash. App. 2005), found that, under Washington state law, a third party beneficiary contract exists when the contracting parties "at the time they enter into the contract, intend that the promisor will assume a direct obligation to the claimed beneficiary." The district court further held, again relying on *Warner,* that the "test of intent is an objective one—whether performance under the contract necessarily and directly benefits the third party." The district court recognized that there was no indication that Boeing and Landau "intended to benefit residents near and around the Auburn plant." However the district court concluded:

> it is clear that Landau's performance of its obligations under the contract would "necessarily and directly benefit" the Plaintiffs in this action. Indeed, part of its obligations included remediation services and engineering services. Plaintiffs allege that the remediation services were performed negligently. Therefore, the Court finds that it is conceivable based on Plaintiffs' Amended Complaint that Landau voluntarily undertook remediation services to benefit the Plaintiffs and performed those services negligently.

C. Analysis

Boeing has not met its heavy burden of showing that there is no possibility that Washington law might impose liability on Landau. It seems clear that some, if not most, of the remediation efforts undertaken by Landau were intended to benefit Plaintiffs and their property. Thus, even accepting Boeing's representations that its

contract expressly disclaimed any intent to create third party beneficiaries, and that neither Boeing nor Landau had any intent to create third party beneficiaries, a court could reasonably conclude that the contract did just that. We, like the district court, do not pass on the merits of any such conceivable claim. We hold only that Boeing has not presented discrete and indisputable facts that would preclude Plaintiffs from recovering against Landau. *See Hunter*, 582 F.3d at 1044.

## IV. The Local Controversy Exception

After Boeing removed this action to the district court, Plaintiffs filed their motion to remand, arguing that there was complete diversity, the case was not a mass action under CAFA because it came within the local single event exception to federal jurisdiction under CAFA, 28 U.S.C. § 1332(d)(11)(B)(ii)(I), and that the case satisfied the local controversy exception, *id.* § 1332(d)(4)(A). Boeing responded to all three arguments in its opposition to remand, but the district court's order remanding the case addressed only fraudulent joinder and the local single event exception. Accordingly, Boeing's petition for leave to appeal pursuant to 28 U.S.C. § 1453(1), which we granted, addressed only the district court's rulings on fraudulent joinder and the local single event exception. Nonetheless, both sides addressed the local controversy exception in their briefs and at oral argument.

24

Our leading case on the local controversy exception, *Coleman v. Estes Express Lines*, *Inc.*, 631 F.3d 1010 (9th Cir. 2011), states that a plaintiff seeking remand under this exception has the burden of showing that it applies and that we review issues of statutory interpretation de novo. *Id*. at 1013–14. *Coleman* further holds "that CAFA's language unambiguously directs the district court to look only to the complaint in deciding whether the criteria set forth in § 1332(d)(4)(A)(i)(II)(aa) and (bb) are satisfied." *Id*. at 1015. Unlike subsection (cc) which requires that the court determine whether a defendant "is a citizen of the State," subsections (aa) and (bb) require only that "significant relief is sought" from the defendant and that the defendants' "alleged conduct forms a significant basis for the claims." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa)-(cc). *Coleman* offers three reasons for courts not looking beyond the complaint in determining whether a case satisfies the requirements of subsections (aa) and (bb): (1) "the plain language of these subsections indicates, through the use of the words 'sought' and 'alleged,' that the district court is to look to the complaint rather than to extrinsic evidence"; (2) "though district courts sometimes consider evidence in making some subject matter jurisdiction determinations, they do not always do so"; and (3) "factual determinations under subsections (aa) and (bb) are likely to be more expensive and time consuming than factual determinations of citizenship and amount-in-

controversy." 631 F.3d at 1016. *Coleman* concludes that "nothing in CAFA . . . indicates a congressional intention to turn a jurisdictional determination concerning the local defendant's 'alleged conduct' into a mini-trial on the merits of the plaintiff's claims." *Id*. at 1017.

Although *Coleman* directs us to look only to the complaint in determining whether Plaintiffs have met the criteria set forth in § 1332(d)(4)(A)(i)(II)(aa) and (bb), we decline to make this determination in the first instance. As noted, the issue was not addressed by the district court. Furthermore, the time restraints for deciding a CAFA appeal, *see* 28 U.S.C. § 1453(c)(2), make it more difficult for the parties to fully brief, and the court to consider, issues that were not fully fleshed out in the district court.

More importantly, whether Plaintiffs' case meets these criteria for the local controversy exception raises questions under Washington law that merit more briefing and consideration than is feasible under § 1453(c)(2), and might even require that Plaintiffs amend their complaint. In *Coleman*, we recognized "the difficulties that can be created by different pleading requirements in state and federal courts." 631 F.3d at 1020. Accordingly, it is possible that if a case "is removed from state to federal court under CAFA the complaint, as originally drafted, will not answer the questions that need to be answered before the federal

26

court can determine whether the suit comes within the local controversy exception." *Id*. at 1020–21. *Coleman* concluded that in such a circumstance, "the district court may, in its discretion, require or permit the plaintiff to file an amended complaint that addresses any relevant CAFA criteria." *Id*. at 1021.

As previously indicated, Boeing argues that Plaintiffs' complaint is too conclusory to meet the requirements of Fed. R. Civ. P. 12(b)(6), and does not specify how Landau's undertakings were to benefit Plaintiffs. It also argues that Plaintiffs are not third-party beneficiaries to the contract. Plaintiffs respond that their complaint is adequate under Washington law and that certain obligations and responsibilities arise as a matter of Washington law. Both Boeing and the district court cite *Burg v. Shannon & Wilson, Inc*., 43 P.3d 526 (Wash. App. 2002), but Boeing concluded that Plaintiffs cannot assert a viable cause of action, while the district court concluded that they might be able to assert a claim for negligence. Thus, the adequacy of Plaintiffs' complaint under Washington law is not clear.

Moreover, whether Plaintiffs seek "significant relief" from Landau and whether Landau's conduct "forms a significant basis" for their claims are not simple issues. They appear to fall between the two examples in the legislative history that are noted in *Coleman*. Clearly, Landau's involvement is greater than the car dealership in the first example, but its involvement is also much less than

27

that of the Florida funeral home in the second example. *See Coleman*, 631 F.3d at 1018. Landau's "alleged conduct" is distinct from Boeing's alleged pollution. The consequences of Landau's alleged conduct may also be separate from the alleged harm from Boeing's actions. In addition, even if the alleged harm from Boeing's activities is far greater than the alleged harm from Landau's activities, it is not clear that the relief sought from Landau is not "significant." *Coleman* indicates that courts should not inquire into "the factual swamp of assessing the financial viability of a defendant," *id.* at 1017 (quoting *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009)), but *Coleman* does not address whether "significant relief" is an independent factor or is related to the relief sought from other defendants.

In sum, although *Coleman* directs our attention to the complaint in deciding whether Plaintiffs have satisfied the criteria for the local controversy exception to federal jurisdiction under CAFA, on the record and briefing before us, we decline to attempt to determine in the first instance whether Plaintiffs' case fits within the exception. Accordingly, we leave this issue for the district court to consider.[10]

## V. Conclusion

---

[10]    At oral argument, Boeing agreed that a remand was an available option.

28

Because Plaintiffs' action does not come within the local single event exception to federal jurisdiction under CAFA, the district court's order remanding this case to state court is vacated. The district court's denial of Boeing's allegation of fraudulent joinder is affirmed, and accordingly, there is not complete diversity. Finally, Plaintiffs' assertion that their action comes within the local controversy exception to federal jurisdiction under CAFA is referred to the district court for initial consideration.

**VACATED AND REMANDED.** Each side shall bear its own costs.

**Counsel**

Michael Sylvain Paisner, of Renton Washington (argued), Jeffrey M. Hanson, Perkins Coie LLP, Seattle, Washington, and Michael F. Williams, Peter A. Farrell, Michael J. Podberesky, and Devein A. DeBacker, Kirkland & Ellis, LLP, of Washington, D.C., for defendant-appellant The Boeing Company.

Robert Finnerty, Thomas V. Giraldi, and David N. Bigelow (argued), Giraldi/Keese of Los Angeles, California, and Thomas Vertetis, Pfau Cochran Vertetis of Tacoma, Washington for the plaintiffs-appellees, Jocelyn Allen, et al.

***Allen v. The Boeing Company*, Case No. 15-35162**
**Rawlinson, Circuit Judge, dissenting in part:**

I respectfully dissent from that portion of the majority opinion reversing the remand of this case to state court. The facts of this case fall somewhere between our decision in *Nevada v. Bank of America*, 672 F.3d 661 (9th Cir. 2012), and the Third Circuit's decision in *Abraham v. St. Croix Renaissance Group, L.L.L.P.*, 719 F.3d 270 (3d Cir. 2013). Ultimately, I conclude that the analysis in *Abraham* is more persuasive on the particular issue we are called upon to decide.

I am persuaded to this view by the particular facts of the respective cases. In the *Nevada* case, the state's Attorney General filed an action against Bank of America, alleging that the bank "misled Nevada consumers about the terms and operation of its home mortgage modification and foreclosure processes . . ." *Nevada*, 672 F.3d at 664. Bank of America removed the action to federal court under the Class Action Fairness Act (the Act). The district court denied the state's motion to remand, and this court granted the state's request for leave to appeal. *See id*. at 665. We identified the pivotal issue as whether the action qualified as a mass action. Specifically, we considered whether the "event or occurrence" exclusion in the Act precluded federal jurisdiction. *See id*. at 668; *see also* 28

1

U.S.C. § 1332(d)(11)(B)(ii)(I) (excluding from the Act's definition of "mass action" a "civil action in which all of the claims in the action arise from an event or occurrence in the State in which the action was filed"). We explained that the "event or concurrence exclusion applies only where all claims arise from a *single* event or occurrence . . ." *Nevada*, 672 F.3d at 668 (internal quotation marks omitted) (emphasis in the original). We noted that this standard was not met because the action filed by the Attorney General "allege[d] widespread fraud in thousands of borrower interactions . . ." *Id*.

In contrast to *Nevada*, the facts in *Abraham* more closely mirror the facts of this case. The defendant purchased a former alumina refinery. The plaintiffs alleged in their complaint that the refinery released hazardous materials that were dispersed and disseminated by wind and erosion. *See* 719 F.3d at 272-73. Plaintiffs also alleged that the defendant failed to abate the dispersal and dissemination of the hazardous substances. *See id*. at 273.

The parties disagreed about whether the "event or occurrence" exclusion applied. The plaintiffs argued that their action came within the exclusion "because every operative incident occurred [locally] and caused injury and damages to the plaintiffs' persons and property [locally]." *Id*. at 274 (alteration and internal quotation marks omitted). According to the plaintiffs, their claims arose "from an

2

event or occurrence [locally] that happened at a single location, the alumina refinery. . . ." *Id*. (internal quotation marks omitted).

The defendant countered that the "event or occurrence" exclusion was inapplicable "because it requires a single incident and the plaintiffs' complaint alleged that there were multiple events and occurrences over many years. . . ." *Id*. (internal quotation marks omitted). On appeal, the Third Circuit reasoned that "[i]n common parlance, neither the term event nor occurrence is used solely to refer to a specific incident that can be definitively limited to an ascertainable period of minutes, hours or days." *Id*. at 277 (footnote reference and internal quotation marks omitted). The Third Circuit noted that the words "event" and "occurrence" do not "necessarily" embody a "temporal limitation." *Id*.

The Third Circuit concluded that the complaint's allegations asserted "circumstances that persisted over a fixed period of time—specifically, from 2002, when [defendant] acquired the former alumina refinery, to [2013]." *Id*. at 279. The Third Circuit delineated the allegations in the complaint as including the hazardous substances embedded in the mud, the plaintiffs' exposure to those hazardous substances, and the failure of the defendant to remediate. *See id*. The Third Circuit adopted the district court's characterization of plaintiffs' allegations as involving "the continuous release of toxic substances from a single facility

3

located in the Virgin Islands . . ." *Id*. (internal quotation marks omitted). The Third Circuit agreed that "these circumstances" met the "event or occurrence" exclusion in the Act, and affirmed the district court's remand of the action to state court. *Id*. at 279-80.

There is a clear parallel between the allegations made by the plaintiffs in the *Abraham* case and the allegations made by the plaintiffs in this case. Although I would not necessarily go so far as to label the Civil War a single event under the Act, the approach taken by the Third Circuit is otherwise reasonable. The plaintiffs in this case made allegations similar to those made in *Abraham*. In their Amended Complaint, they alleged that they and their properties were affected by the release of toxic chemicals and other hazardous substances emanating from the operations of defendant Boeing. Plaintiffs also alleged that Boeing and its agent Landau Associates failed to adequately remediate the hazardous substances. All of the affected residents and properties were located in Algona, Washington and made identical claims against Boeing and Landau Associates.

Plaintiffs identified two plumes of volatile organic chemicals originating from the same Boeing plant as the source of their injuries. The district court described the allegations as follows:

> As in *Abraham*, Plaintiffs' Amended Complaint alleges

4

circumstances that persisted over a fixed period of time—specifically, from the late 1960s and/or mid-1970s, when Boeing bought and used certain property as an airplane manufacturing site, through the present. These circumstances included: 1) Boeing's use of certain chemical solvents as degreasing agents for their metal parts, which allegedly leeched into the surrounding groundwater, then soil and air; 2) the Plaintiffs' alleged continual exposure to the chemical solvents as the chemicals escaped the groundwater into the soil and into the air; and 3) the alleged failures of Boeing and its subcontractor to properly remediate the hazard and/or inform neighboring owners of the hazard. . . . Simply put, [Plaintiffs] allege that the condition of the site during the period of Boeing's use and ownership provided a source for the ongoing emission of chemical solvents into the site's groundwater (then soil and air) which were subsequently dispersed onto the Plaintiffs' persons and property, and which have not been properly remediated . . . .

District Court Order, p. 6 (citations omitted).

I agree with the district court this case is more like *Abraham* than *Nevada*.

It is understandable why we held that the "event or occurrence" exclusion did not apply in *Nevada*. The allegations in the complaint alleged fraud in thousands of individual lending transactions. *See Nevada*, 672 F.3d at 668. Each loan is necessarily dependent on highly individualized circumstances, including creditworthiness and income. *See, e.g.*, *Enriquez v. Countrywide Home Loans*, 814 F. Supp. 2d 1042, 1051-52 (D. Haw. 2011) (referencing plaintiff's credit rating and

5

debt to income ratio in relation to her loan qualification process).

In addition to the obvious individualized circumstances at issue in *Nevada*, two other matters are noteworthy.  The first is that the State of Nevada did not even contend that the "event or occurrence" exclusion applied in the district court or on appeal.  *Nevada*, 672 F.3d at 668 n.2.  The second is that we expressly referenced "environmental torts such as a chemical spill" as occurrences to which the exception was "clear[ly] . . . intended to apply." *Id*. at 668.  These considerations persuade me that *Nevada* does not support the outcome reached by the majority.

A recent decision from the Fifth Circuit similarly distinguished our "ambiguous decision" in Nevada.  *Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405, 412 (5th Cir. 2014).  As discussed above, the Fifth Circuit also highlighted our citation in *Nevada* to an "environmental tort" as an "example that satisfies [the "event or occurrence"] language" and our holding that the single event exclusion "cannot apply to . . . thousands of separate transactions." *Id*. (citation omitted).  The reasoning of the Third Circuit in *Abraham*, the reasoning of the Fifth Circuit in *Rainbow Gun Club*, and the disparate facts of *Nevada* lead me to dissent.  I would affirm the district court decision remanding this case to state court.