[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14427

_____

D.C. Docket No. 2:18-cv-01023-MHH


KELVIN SPENCER, et al.,

Plaintiffs - Appellees,

versus

SPECIALTY FOUNDRY PRODUCTS INC., et al.,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 17, 2020)

Before MARTIN, ROSENBAUM, and NEWSOM, Circuit Judges.

MARTIN, Circuit Judge:

Kelvin Spencer and 229 other former workers at the Grede Foundry in

Bessemer, Alabama (collectively, the "Plaintiffs") say they were harmed by

exposure to hazardous and harmful chemical substances released and formed at the foundry. The foundry is now out of business, so the Plaintiffs filed suit in Alabama state court against ten entities that manufactured, sold, supplied, and distributed the products they believe harmed them (the "Defendants").[1] One Defendant removed the case to federal court, citing the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.), as the basis for removal. The Plaintiffs moved to remand the case back to state court. The District Court granted their motion, finding that the Plaintiffs' action falls within the local event exception to CAFA's grant of federal jurisdiction, 28 U.S.C. § 1332(d)(11)(B)(ii)(I). The Defendants sought leave to appeal, which we granted pursuant to 28 U.S.C. § 1453(c).

After careful consideration, and with the benefit of oral argument, we vacate the District Court's grant of the motion to remand.

## I.

### A. FACTUAL BACKGROUND

From an unknown date until its closing in 2016 or 2017, the Grede Foundry "engaged in the making of foundry casted metal parts and related moulding,

---

[1] The Plaintiffs' complaint also asserts claims against up to 450 fictitious party defendants. We use the term "Defendants" to refer to the named defendants. Although one Defendant—Fairmount-Santrol, Inc.—was dismissed from the case by joint stipulation on January 25, 2019, our use of "Defendants" refers to all parties named on the other side of the "v." from the Plaintiffs at any point in this litigation.

coring, and finishing processes." All 230 Plaintiffs worked at the foundry for some period of time and claim to have been harmed by the use of the Defendants' products. Not all Plaintiffs worked at the foundry at the same time, nor were their jobs the same. For example, one Plaintiff who started at the foundry in 1997 worked in the "core room" and drove a forklift to unload delivery trucks. Another Plaintiff started at the foundry in 1981 and left in 2015. This Plaintiff was a supervisor and, from approximately 1995 until 2015, assisted in the ordering of chemicals to be used at the foundry.

The Defendants marketed, manufactured, distributed, and sold products used at the foundry in the process of foundry casting and finishing metal parts. Three Defendants manufactured specialized shell core sand or foundry sand that was used in the core room or the foundry area. Two different Defendants manufactured chemical resins, binders, setting catalysts, and chemically treated foundry sand pre-mix products. Two additional Defendants manufactured specialized foundry chemical products, including triethylamine liquid or gas ("T-gas") and a release agent ("Zip Slip"), that were used for moulding, coring, casting, finishing or other foundry processes. Finally, two Defendants both manufactured their own products and distributed products made by the other Defendants.

The Plaintiffs allege that the normal and foreseeable use of the Defendants' products at the foundry resulted in the formation and release of hazardous and

3

carcinogenic chemical substances that are toxic to workers.  They also say the Defendants gave unsafe directions for use of their products; failed to report pertinent adverse scientific data regarding the safety of their products; and failed to warn about or disclose known dangers from the products.  These actions caused the Plaintiffs physical injuries and harm, adverse medical symptoms, mental anguish, and emotional distress, all of which supposedly manifested within two years of the filing of the complaint.  The Plaintiffs also allege the Defendants' wrongful actions occurred "separately and repetitively, on a continuing basis," until the foundry was closed in 2016 or 2017.

## B.  PROCEDURAL HISTORY

The Plaintiffs filed their complaint in the Circuit Court of Jefferson County, Alabama.  The complaint asserts six counts arising under Alabama law: (1) wantonness; (2) products liability under the Alabama Extended Manufacturers Liability Doctrine; (3) failure to warn; (4) fraudulent misrepresentation, suppression, and deceit: (5) negligence; and (6) conspiracy.  All the claims stem from the Plaintiffs' allegation that the "normal and foreseeable" use of the Defendants' products caused the "release and formation of hazardous and carcinogenic chemical substances," harming the Plaintiffs.

About a month after the complaint was filed, one Defendant, Imerys Minerals USA, Inc., removed the case to federal court.  According to Imerys,

4

federal jurisdiction is proper pursuant to CAFA's "mass action" provision, which authorizes federal jurisdiction over actions seeking over $5,000,000 in monetary relief with more than 100 minimally diverse plaintiffs whose claims involve common questions of law or fact.  See 28 U.S.C. § 1332(d)(2), (11)(B)(i).

The Plaintiffs moved to remand the case to state court.  The Plaintiffs stated two bases for remand.  First, they contended this case does not qualify as a "mass action" under CAFA because "all of the claims . . . arise from an event or occurrence in the State in which the action was filed" and this event or occurrence "allegedly resulted in injuries in that State or in States contiguous to that State." Id. § 1332(d)(11)(B)(ii)(I).  This carve-out to federal jurisdiction is called the "local event exception."  The Plaintiffs also argued remand was proper pursuant to the "local controversy exception," which mandates remand of mass (or class) actions in which over two thirds of the plaintiffs are citizens of the state in which the case was filed, at least one "significant" defendant is a citizen of that state, and the principal injuries or related conduct occurred in that state.  See id. § 1332(d)(4)(A)(i), (11)(A).

The District Court granted the motion to remand.  R. Doc. 69 ("Remand Order").  The court did not address the local controversy exception, choosing instead to rest its decision entirely on the local event exception.  The court first found that the meaning of "an event or occurrence" was unclear from the statutory

5

text.  Id. at 4.  It then turned to the legislative history of CAFA.  After quoting extensively from a report on CAFA by the Senate Judiciary Committee (the "Senate Report"),[2] the District Court concluded that Congress intended only "case[s] with substantial interstate effects" to wind up in federal court.  Remand Order at 9 (quoting Carr v. Arvin Indus., No. 05-CV-1283, 2005 WL 8157853, at *9 (N.D. Ala. July 20, 2005)).  The court held that because the foundry was located in Alabama, the Plaintiffs worked in Alabama, the alleged injuries occurred in Alabama, and the sole purchaser of the Defendants' products was the foundry,[3] this case is "truly local" such that CAFA jurisdiction would be improper under the local event exception.  Id. at 10.  The District Court also analogized this case to toxic torts cases involving "continuous exposure[s]," which some courts have counted as "an event or occurrence" within the meaning of the local event exception.  Id. at 10–13.

The Defendants sought permission for an interlocutory appeal, which this Court granted on November 12, 2019.  Briefing was completed on an amended schedule jointly agreed to by the parties and oral argument was held on March 3, 2020.

---

[2] S. Rep. No. 109-14 (2005), reprinted in 2005 U.S.C.C.A.N. 3.

[3] The Defendants dispute this: they ship their products to many customers, including the Grede Foundry when it operated.

## II.

We review <u>de novo</u> the decision to remand a case to state court for lack of subject-matter jurisdiction. <u>Lowery v. Ala. Power Co.</u>, 483 F.3d 1184, 1193 (11th Cir. 2007). "[F]actual determinations necessary to establish jurisdiction" are reviewed for clear error. <u>Dudley v. Eli Lilly & Co.</u>, 778 F.3d 909, 911 (11th Cir. 2014).[4]

## III.

This appeal turns on the meaning of the local event exception, in particular the phrase "an event or occurrence," 28 U.S.C. § 1332(d)(11)(B)(ii)(I). If the allegations in the complaint constitute "an event or occurrence," the District Court was correct in remanding the case back to state court. If, however, the allegations are not "an event or occurrence," then the District Court was wrong in holding that this case is not a mass action within the meaning of CAFA. If the case does not fit within the local event exception, and presuming no other exceptions to federal jurisdiction apply, then this case was properly removed to federal court. See id. § 1441(a) (providing for removal over any civil action with original federal

---

[4] A brief word about burdens. In CAFA cases, the removing defendant bears the burden of establishing federal jurisdiction. <u>See</u> <u>Lowery</u>, 483 F.3d at 1208. Yet a plaintiff seeking remand bears the burden of showing he fits within an exception to CAFA's removal jurisdiction. <u>Id.</u> at 1208 n.55. The Defendants urge us to reconcile these competing principles and clarify that the Plaintiffs bear the burden of proving the local event exception applies. This question is ultimately academic here because the local event exception clearly does not apply in this case, no matter who bears the burden.

7

jurisdiction); see also Lowery, 483 F.3d at 1196 (citing 28 U.S.C. §§ 1332(d)(11)(A), 1453(b)) (discussing removal of mass actions).

The parties disagree as to the scope of "an event or occurrence." The Plaintiffs argue this phrase does not require "a one-time event" or "a discre[te] moment in time." Plaintiffs instead say these words encompass a continuing set of "truly local" circumstances. Br. of Appellees at 13–14, 34. They say this requirement is satisfied here because the harm caused by the Defendants was a continuing tort located solely within the foundry. Meanwhile, the Defendants' definition of this term has shifted during this litigation. At the outset of their appeal, they contended "an event or occurrence" refers only to "a single injury-causing event or occurrence." Br. of Appellants at 20. In their reply brief, however, they seem to argue that "an event or occurrence" means "a single focused event that is causally correlated to and then culminated in all of [the Plaintiffs'] alleged injuries." Reply Br. at 5 (quotation marks omitted). Under either definition, however, they say the local event exception is not satisfied here because the Plaintiffs' allegations are too disparate and disconnected.

We have come to our own view on the meaning of the local event exception. We reject the Defendants' view that the local event exception applies to only events or occurrences that take place at a singular moment in time. But neither do we accept the Plaintiffs' view that the local event exception applies to any

8

continuing set of circumstances in a single location, regardless of when and how the harm came about.  We conclude that "an event or occurrence" refers to a series of connected, harm-causing incidents that culminate in one event or occurrence giving rise to plaintiffs' claims.  Because the allegations in the Plaintiffs' complaint do not meet that standard, we vacate the District Court's grant of the motion to remand.[5]

## A.

### 1.  Statutory Text

In ascertaining the meaning of the local event exception, we begin with the text of the statute.  See Ross v. Blake, 578 U.S. ___, 136 S. Ct. 1850, 1856 (2016). Because CAFA does not define the phrase "an event or occurrence," we interpret those words in accordance with their plain and ordinary meaning.  See Barton v. U.S. Att'y Gen., 904 F.3d 1294, 1298 (11th Cir. 2018) ("[U]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary

---

[5] The Defendants also urge us to reverse the District Court on the ground that the Plaintiffs also have not satisfied § 1332(d)(4)(A)'s local controversy exception.  Because the District Court did not address this ground for remand, and because the Defendants' petition for interlocutory appeal did not present this issue, we decline to address whether the local controversy exception applies here.  See Allen v. Boeing Co., 784 F.3d 625, 637 (9th Cir. 2015) (declining "to attempt to determine in the first instance whether Plaintiffs' case fits within" the local controversy exception).  The Plaintiffs may wish to have the District Court consider this issue on remand, but we take no position on it at this time.

meaning." (quoting Sebelius v. Cloer, 569 U.S. 369, 376, 133 S. Ct. 1886, 1893 (2013))).

To determine the ordinary meaning of an undefined statutory term, "we often look to dictionary definitions for guidance." In re Walter Energy, Inc., 911 F.3d 1121, 1143 (11th Cir. 2018). In this case, "both popular and legal" dictionaries support our interpretation of "event or occurrence." See Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C., 760 F.3d 405, 409 (5th Cir. 2014). For instance, Black's Law Dictionary defines "occurrence" as "[s]omething that happens or takes place," including a "continuing condition that results in personal injury or property damage." Occurrence, Black's Law Dictionary (11th ed. 2019). Similarly, an "event" is "[s]omething that happens or is thought of as happening," a definition that clearly contemplates an ongoing condition. Event, Shorter Oxford English Dictionary 873 (5th ed. 2002); see Event, American Heritage Dictionary 616 (4th ed. 2006) ("Something that takes place . . . ."). All these definitions also agree that "event" and "occurrence" are more or less interchangeable. See, e.g., Event, American Heritage Dictionary 616 (4th ed. 2006) ("A significant occurrence or happening."). Based on these definitions, we think that the phrase "event or occurrence" is broad enough to include a solitary happening that occurs in a single moment in time and (in some cases at least) a continuing set of related

10

Case: 19-14427    Date Filed: 03/17/2020    Page: 11 of 19

circumstances. <u>See</u> <u>Rainbow Gun Club</u>, 760 F.3d at 409; <u>Abraham v. St. Croix Renaissance Grp., L.L.L.P.</u>, 719 F.3d 270, 276–77 & n.6 (3d Cir. 2013).

What, though, to do with "an"? For some courts, "an" is everything. In <u>Allen</u>, the Ninth Circuit said that "an," combined with the use of the singular "event" and "occurrence," means the local event exception refers only "to a singular happening." 784 F.3d at 631; <u>see also</u> <u>Dunn v. Endoscopy Ctr. of S. Nev.</u>, No. 2:11-CV-560, 2011 WL 5509004, at *2 (D. Nev. Nov. 7, 2011) ("The use of the singular in the statutory language is important and sufficient."). We agree, to a point. It is true that the use of "an" implies one series of connected circumstances. But it would be a misreading of the statute to restrict the local event exception to events or occurrences that are concentrated in a single point in time. A baseball game is a single "event," even though it involves dozens of occurrences (a strikeout, a home run, the seventh inning stretch) that happen over the course of a few hours. Even several baseball games may be an "event"—for example, the World Series, which takes place over an ascertainable period of time with the same teams playing. But it would stretch this phrase beyond its ordinary meaning to say that a game between the Braves and the Mets in one season and another game between the Braves and the Marlins, years later, are part of the same event or occurrence simply because both games involve the same team playing the same

11

sport.  These games share some commonality but, without more facts connecting them, they cannot be considered a single "event or occurrence."

The District Court found the text of the local event exception to be ambiguous, so it turned to legislative history to guide its interpretation.  See Remand Order at 4–7.  While the District Court is not the only court to rely on CAFA's Senate Report when interpreting the local event exception, we do not believe this is necessary because the text of the local event exception is clear.  See Abraham, 719 F.3d at 278–79; cf. Rainbow Gun Club, 760 F.3d at 410–11.  Thus, "we should not, cannot, and do not use legislative history" to navigate around what CAFA's plain text tells us to do.  See Nesbitt v. Candler County, 945 F.3d 1355, 1361 (11th Cir. 2020); cf. Lowery, 483 F.3d at 1205–06 (consulting the Senate Report after finding potential ambiguity in CAFA's amount-in-controversy provision).

### 2.  Other Judicial Interpretations

Our interpretation of the local event exception aligns with two of our sister circuits.  The Third Circuit's 2013 opinion in Abraham was the first appellate decision to arrive at a view similar to ours.  In Abraham, the St. Croix Renaissance Group ("SCRG") purchased a former alumina refinery, which had for the previous 30 years emitted hazardous substances into the red mud outside the refinery.  719 F.3d at 272–73.  These substances were dispersed by wind and disseminated as a

12

result of erosion.  Id. at 273.  The plaintiffs sued, arguing that SCRG was liable for the continuing torts resulting from the plant.  Id. at 273–74.  SCRG removed the case to federal court.  Id. at 273.  The Third Circuit acknowledged the presence of "an," but looked to the ordinary meaning of "event or occurrence" to confirm whether the phrase necessarily refers to a singular moment in time.  Id. at 277.  The court stated that "neither the term 'event' nor 'occurrence' is used solely to refer to a specific incident that can be definitively limited to an ascertainable period of minutes, hours, or days."  Id.  Instead, an "event or occurrence" can refer to "a continuing set of circumstances" that "share some commonality and persist over a period of time."  Id.  This rule allowed the plaintiffs' claims to stay in state court, as their complaint alleged a continuous, ongoing emission of toxic substances without any "separate and discrete incidents causing the emission."  Id. at 280.

The Fifth Circuit followed a similar approach the next year in Rainbow Gun Club.  The plaintiffs in that case entered into oil, gas, and mineral leases with Denbury Onshore.  760 F.3d at 407.  They later sued, arguing Denbury breached its duty to act as a reasonable and prudent operator of the well that was drilled under these leases.  Id.  The Fifth Circuit agreed with the Third Circuit that the plain meanings of "event" and "occurrence" support the view that the local event exception is "not generally understood to apply only to incidents that occur at a discrete moment in time."  Id. at 409.  The court took account of the singularity

13

implicit in the local event exception by holding that it encompasses both "a discrete moment in time" as well as "a pattern of conduct in which the pattern is consistent in leading to a single focused event." Id. at 411–12. The Fifth Circuit concluded that the plaintiffs' claims belonged in state court because their complaint alleged "multiple acts of negligence" giving rise to one harm-causing event: "the failure of the Well." Id. at 412.

The Ninth Circuit has issued two decisions exemplifying a contrasting view. First, in Nevada v. Bank of America Corp., 672 F.3d 661 (9th Cir. 2012), the State of Nevada brought a parens patriae action in state court alleging that "Bank of America misled Nevada consumers about the terms and operation of its home mortgage modification and foreclosure processes, in violation of [Nevada law]." Id. at 664. Bank of America removed the case to federal court and the district court denied the motion to remand. Id. at 666. Although the Ninth Circuit did order the case remanded to state court, id. at 676, it declined to apply the local event exception, id. at 667–68. The local event exception, said the court, "applies only where all claims arise from a single event or occurrence . . . that gives rise to the claims of all plaintiffs." Id. at 668 (quotation marks omitted). The local event exception did not apply to Nevada's claims because the complaint "allege[d] widespread fraud in thousands of borrower interactions." Id. (emphasis added).

14

Three years later came <u>Allen</u>.  In <u>Allen</u>, the plaintiffs alleged that Boeing released toxins into the groundwater around one of its facilities, and that another firm, Landau Associates, was negligent in its investigation and remediation of the pollution.  784 F.3d at 627.  In the Ninth Circuit's estimation, the plaintiffs' case belonged in federal court because "a continuing course of pollution, contamination, or conduct that occurs over a period of years" does not fit within the local event exception.  <u>Id.</u> at 632.  The Ninth Circuit, like we do, examined dictionary definitions of "event" and "occurrence."  <u>Id.</u> at 630–31.  While the Ninth Circuit recognized these words can be given a broader interpretation, the court concluded without citation that they "most commonly and reasonably refer to a singular happening," and that "[t]here is no reason to think that Congress intended anything else."  <u>Id.</u> at 631.

We view the Ninth Circuit's reading of the statute as too cramped.  "An event or occurrence" can be a single moment in time, but it can also be a series of connected events occurring over a longer period.  At the same time, the Third Circuit's analysis would benefit from guardrails for applying the local event exception.  The constraints of the Fifth Circuit's decision in <u>Rainbow Gun Club</u>—requiring the defendants' actions to be contextually connected and to culminate in one, distinct harm-causing event or occurrence—ensure that courts are best

15

equipped to decide which cases are truly local and which should remain in federal court.

*    *    *

In sum, we hold that the local event exception applies to a singular harm-causing moment in time, as well as a contextually connected series of incidents that culminates in that harm-causing event or occurrence.

B.

The allegations in the Plaintiffs' complaint do not fall within the local event exception. The complaint falls short on three fronts: a connection among the Defendants; a culminating event; and allegations that would reasonably constitute one "event or occurrence." The District Court also mistakenly focused too narrowly on the location and character of the harm to the exclusion of these other factors.

First, the fact that a large number of defendants acted separately to generate the alleged harm is not dispositive of the local event exception. See Adams v. Int'l Paper Co., No. 1:17-CV-105, 2017 WL 1828908, at *7 (S.D. Ala. May 5, 2017) ("That defendants are alleged to have participated in that single event or occurrence in different ways does not necessitate a conclusion that there were actually multiple events or occurrences."). But the acts that led to the harm-causing event or occurrence must be "collective" and "related." Rainbow Gun

16

Club, 760 F.3d at 413; see Adams, 2017 WL 1828908, at *7. So, in Adams, the district court found a single "event or occurrence" where one defendant caused the release of toxic pollutants and another defendant exacerbated the release of those same pollutants. 2017 WL 1828908, at *7. In this case, however, the Plaintiffs allege the Defendants' products were used in different ways and caused different harms. Some of the products were used in the core room and some were used in the foundry area. And the products ranged in type from shell core sand to foundry sand, and from chemical resins to T-gas and Zip Slip. Without allegations that the Defendants' acts were related in triggering one harm-causing event or occurrence, this complaint cannot satisfy the local event exception.

Second, the Plaintiffs' complaint does not allege a single culminating event that caused their harm. Instead, as counsel admitted at oral argument, their complaint alleges a string of events over time and later-resulting harm.[6] The Plaintiffs maintain their case is no different from Abraham, Rainbow Gun Club, or Adams, all of which ordered remand to state court under the local event exception.

---

[6] JUDGE NEWSOM: Do you have a single culminating event here, or is it just, over the course of 20 years, there were chemicals that passed through the foundry that either on their own or in combination formed hazardous substances that harmed different people?

COUNSEL: That's exactly right. . . . It's difficult to say when the toxins caused irritation, when did you get sick, when did it manifest.

Oral Argument at 28:34–29:18.

17

However, in these three cases, there was a culminating harm-causing event.  In Abraham, the toxic substances produced by the refinery were dispersed by wind over a discrete, though lengthy, period of time.  719 F.3d at 279–80.  In Rainbow Gun Club, a single well failed.  760 F.3d at 407, 413.  And in Adams, there was a continuous release of particular pollutants.  2017 WL 1828908, at *7.  The Plaintiffs, by contrast, have not identified a single harm-causing event or occurrence.  Instead, their complaint alleges a series of discrete incidents that, both separately and in combination, caused the Plaintiffs harm.  That is not enough for the local event exception.

Finally, the complaint does not sufficiently allege how the Defendants' conduct came together to create one event or occurrence.  The foundry was open for decades, but the Plaintiffs do not say when the Defendants committed the alleged torts or how and when the Plaintiffs were harmed.  Cf. Abraham, 719 F.3d at 279 ("The complaint alleges circumstances that persisted over a fixed period of time . . . .").  Beyond that, the complaint says the Plaintiffs' symptoms manifested within two years of the filing of the complaint.  Yet it is not clear to us that this is the only period of time in which the Plaintiffs alleged they were injured.  See Oral Argument at 30:02–30:16 ("Our pleadings don't go back 17 years . . . . Our complaint is limited to the two years prior to our filing it.").  None of these faults is, by itself, enough to mandate federal jurisdiction over this case.  But when

18

combined with the lack of allegations connecting the Defendants' conduct or pointing to a culminating event, these factors reinforce the propriety of our decision to vacate the District Court's ruling.

We note the District Court was correct that this case does not, on its face, seem to have "substantial interstate effects." Remand Order at 10. But that is not the end of the inquiry. District courts must examine the locus of the harm as well as whether the alleged harm-causing behavior is "an event or occurrence." In addition, while the nature of the harm matters, see id. at 11, it is not everything. Whether the Plaintiffs' allegations are more akin to a toxic spill or a products liability suit is less important than whether the course of conduct leading to the harm was sufficiently related and whether it culminated in a single event.

## IV.

Because the Plaintiffs' complaint does not allege a continuous, related course of conduct culminating in one harm-causing event or occurrence, it does not fall within the local event exception. As a result, we **VACATE** the District Court's grant of the Plaintiffs' motion to remand and **REMAND** the case back to the District Court for further proceedings consistent with our opinion.

19