157 T.C. No. 11

UNITED STATES TAX COURT

SAND INVESTMENT CO., LLC, INLAND CAPITAL MANAGEMENT, LLC,
TAX MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7307-19.                          Filed November 23, 2021.

R opened an examination of P's 2015 tax return and assigned the case to a revenue agent (RA). During the examination the RA was supervised by her team manager (TM1). TM1 oversaw all decisions the RA made with respect to the examination. In September 2018, before the examination concluded, the RA was promoted and transferred to a different team with a different team manager (TM2). But because the examination was ongoing, R authorized the RA to continue her examination under the supervision of TM1. Although TM2 became responsible for approving the RA's timesheets and leave requests, TM1 continued to supervise her work on the examination.

On September 27, 2018, the RA made the decision to assert accuracy-related penalties against P. She generated a penalty approval form, which TM1 signed on November 20, 2018. On November 21, 2018, the RA sent P a packet of documents indicating (among

other things) that R might impose penalties. Two days later TM2 also signed the RA's penalty approval form.

I.R.C. sec. 6751(b)(1) requires that the initial determination of a penalty assessment be approved by the "immediate supervisor" of the person making that determination. P filed a motion for partial summary judgment contending that TM2 was the RA's "immediate supervisor." Because TM2 approved the penalties after the RA mentioned them to P, P urges that TM2's approval was untimely. R filed a cross-motion urging that TM1 was the RA's "immediate supervisor" and that his approval was timely because he approved the penalties before the RA mentioned them to P. In any event R contends that the RA secured timely approval because TM1 and TM2 both approved the penalties before R issued P a notice of final partnership administrative adjustment.

Held: For purposes of I.R.C. sec. 6751(b)(1), the "immediate supervisor" is the individual who directly supervises the examining agent's work in an examination. As the individual who oversaw the RA's work throughout the case, TM1 was the RA's "immediate supervisor." Because TM1 timely approved the RA's penalty determinations, R satisfied the requirements of I.R.C. sec. 6751(b)(1).

Hale E. Sheppard, Jeffrey S. Luechtefeld, John W. Hackney, Brent N. Bartlett, Samuel H. Grier, and Cassandra S. Bradford, for petitioner.

Timothy A. Sloane, Derek P. Richman, and Michelle M. Robles, for respondent.

OPINION

LAUBER, <u>Judge</u>:  This case involves a charitable contribution deduction claimed by Sand Investment Co., LLC (Sand), for a conservation easement.  The Internal Revenue Service (IRS or respondent) issued petitioner a notice of final partnership administrative adjustment (FPAA) disallowing Sand's deduction and determining accuracy-related penalties against it under section 6662A and section 6662(a), (b)(1), (2), and (3), (d), (e), and (h).[1]  Currently before the Court are the parties' cross-motions for partial summary judgment addressing the question whether the IRS complied with section 6751(b)(1) with respect to these penalties.

Section 6751(b)(1) requires that the initial determination of a penalty assessment be personally approved (in writing) by the "immediate supervisor" of the person making that determination.  The parties' dispute focuses chiefly on the meaning of the term "immediate supervisor."  Agreeing with respondent's interpretation, we will grant his motion for partial summary judgment and deny petitioner's.

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The following facts are derived from the pleadings, the parties' motion papers, and the exhibits and declarations attached thereto. They are stated solely for purposes of deciding the cross-motions and not as findings of fact in this case. See Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). Sand had its principal place of business in Georgia when the petition was timely filed.

Sand is a South Carolina limited liability company. For its short tax year beginning December 9, 2015, and ending December 31, 2015, it was treated as a partnership for Federal income tax purposes. Sand is subject to the TEFRA unified audit and litigation procedures,[2] and petitioner Inland Capital Management, LLC, is its tax matters partner.

In May 2014 Sand acquired roughly 1,000 acres of land in Jasper County, South Carolina. On December 28, 2015, Sand granted to the Southeast Regional Land Conservancy a conservation easement over a portion of that land. Sand timely filed Form 1065, U.S. Return of Partnership Income, for its short 2015 tax

[2]Before its repeal, TEFRA (the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, secs. 401-407, 96 Stat. at 648-671) governed the tax treatment and audit procedures for many partnerships.

year. On that return it claimed a charitable contribution deduction of $80,150,000 for the donation of the easement.

The IRS selected Sand's return for examination and assigned the case to Revenue Agent (RA) Adrienne Cooper, a member of Team 1124 in the IRS Large Business & International Division (LB&I). Supervisory Revenue Agent Gregory Burris supervised all cases assigned to Team 1124, and he served as both the "case manager" and the "issue manager" for the examination of Sand's return. As the case and issue manager, he supervised all aspects of the examination. See Internal Revenue Manual (IRM) pt. 4.46.1.1.3.1 and .2 (Dec. 13, 2018).

On September 2, 2018, as the examination neared completion, the IRS promoted RA Cooper to "Senior Revenue Agent." As a result of this promotion she was transferred to a different team in LB&I, and William Wilson became her new supervisor. But because the Sand examination was ongoing, the IRS authorized RA Cooper to continue her work with Team 1124 until that examination concluded. Although Mr. Wilson became responsible for approving RA Cooper's timesheets, leave requests, and other routine administrative matters, Mr. Burris remained the case and issue manager of the Sand examination and continued to oversee all of RA Cooper's work on that examination.

Following her promotion RA Cooper proceeded with her examination of Sand's return. On September 27, 2018, she made the decision to assert penalties against Sand under section 6662A and section 6662(a), (b)(1), (2), and (3), (d), (e), and (h). Her recommendations to this effect were set forth in a "Penalties Lead Sheet." Mr. Burris digitally signed this document on November 20, 2018, as the "Case/Issue Manager." RA Cooper concurrently prepared a Supplemental Civil Penalty Approval Form, which states that she "made the initial determination to assert * * * penalties." RA Cooper signed that form on November 20, 2018, and Mr. Burris digitally signed it the same day as the "Case & Issue Supervisor." RA Cooper also sent a copy of her penalty approval form to Mr. Wilson, who signed on November 23 as the "Immediate Supervisor."

On November 21, 2018, RA Cooper sent petitioner a packet of documents including a Form 5701, Notice of Proposed Adjustment, and a Letter 1807, TEFRA Partnership Cover Letter for Summary Report. These documents summarized RA Cooper's position on each issue in the case, including Sand's possible exposure to penalties. One month later RA Cooper held a closing conference with petitioner's representative, after which she proceeded to close the case. On February 8, 2019, the IRS issued an FPAA to Sand, disallowing its charitable contribution deduction and determining penalties.

## Discussion

A.     Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp., 98 T.C. at 520. The sole question presented at this juncture is whether the IRS complied with the requirements of section 6751(b)(1). The parties have filed cross-motions for partial summary judgment on this question, and we find that it may be adjudicated summarily.

B.     Analysis

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." In a TEFRA case such as this, supervisory approval generally must be obtained before the FPAA is issued to the partnership. See Palmolive Bldg. Inv'rs, LLC v. Commissioner, 152 T.C. 75, 83 (2019). If supervisory approval was obtained by that date, the partnership must establish that the approval was

untimely, i.e., "that there was a formal communication of the penalty before the proffered approval" was secured.  See Frost v. Commissioner, 154 T.C. 23, 35 (2020).

Respondent has supplied the Supplemental Civil Penalty Approval Form by which RA Cooper recommended assertion of penalties against Sand.  RA Cooper's case and issue manager, Mr. Burris, signed the form on November 20, 2018, and RA Cooper's new team leader, Mr. Wilson, signed the form on November 23, 2018.  The definite decision to assert penalties was communicated to Sand more than two months later, in the FPAA dated February 8, 2019.  Respondent thus contends that timely approval of these penalties was secured.  See Frost, 154 T.C. at 35; Belair Woods, LLC v. Commissioner, 154 T.C. 1, 15 (2020).

Petitioner contends that supervisory approval came too late, and its argument has two essential steps.  First, petitioner contends that the penalties were formally communicated to Sand on November 21, 2018, when RA Cooper transmitted a packet of documents that mentioned penalties, including a Letter 1807 and Form 5701.  Second, petitioner contends that RA Cooper's "immediate supervisor" at that moment was Mr. Wilson.  Because Mr. Wilson did not sign the penalty approval form until November 23, 2018, petitioner urges that his approval

was untimely. Because we reject the second step of petitioner's argument, we need not address in this case the merits of the first.[3]

As always, statutory interpretation begins with the text. Spencer v. Specialty Foundry Prods., Inc., 953 F.3d 735, 740 (11th Cir. 2020).[4] Under section 6751(b)(1), RA Cooper was required to secure timely approval of the penalties from her "immediate supervisor * * * or such higher level official as the Secretary may designate." Congress did not define the term "immediate supervisor," and that term elsewhere appears only once in the Code. See sec. 7521(c). The IRS itself does not appear to employ the term "immediate supervisor" uniformly in its personnel practices. See, e.g., IRM pt. 4.46.4.11.2(3) (Dec. 13, 2018) (referring to an examiner's "issue manager" as the immediate supervisor); id. pt. 20.1.4.1.3(3) (Feb. 9, 2018) (referring to an examiner's "team manager" as the immediate

---

[3]Cf. Thompson v. Commissioner, 155 T.C. 87, 92-93 (2020) (holding that a preliminary proposal of penalties in an offer letter was not an "initial determination" because the examination was not yet complete); Belair Woods, 154 T.C. at 12 (holding that a preliminary proposal of penalties in a Letter 1807 was not an "initial determination"); Tribune Media Co. v. Commissioner, T.C. Memo. 2020-2, 119 T.C.M. (CCH) 1006, 1010 (holding that a proposal of penalties in a Form 5701 was not an "initial determination" where the form stated that "additional information * * * [could] alter or reverse" the proposal).

[4]Absent stipulation to the contrary, appeal of this case would apparently lie to the U.S. Court of Appeals for the Eleventh Circuit. See sec. 7482(b)(1)(E); Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).

supervisor); id. pt. 4.19.10.4.5.3(3) (Dec. 9, 2020) (referring to an examiner's "immediate manager"). In this respect as in others, section 6751(b) is not a paragon of statutory draftsmanship. Cf. Belair Woods, 154 T.C. at 7 (describing the phrase "initial determination of * * * [an] assessment" as a "hapax legomenon").

"It is a well-established rule of construction that if a statute does not define a term, the term is given its ordinary meaning." Gates v. Commissioner, 135 T.C. 1, 6 (2010); see Barton v. U.S. Att'y Gen., 904 F.3d 1294, 1298 (11th Cir. 2018) (noting that statutory terms "are generally interpreted in accordance with their ordinary meaning" (quoting Sebelius v. Cloer, 569 U.S. 369, 376 (2013))). When used in a non-temporal sense, "immediate" means "with no intermediary." Webster's New World College Dictionary 713 (4th ed. 2010). And a "supervisor" is "a person who supervises," i.e., a person who "oversee[s], direct[s], or manage[s] (work, workers, a project, etc.)." Id. at 1438.

At the relevant time RA Cooper had two different supervisors, and they oversaw distinct aspects of her day-to-day work. Given the statutory context, which addresses approval of penalties, the relevant work is the project that generated the penalties, namely, the Sand examination. Because Mr. Burris supervised RA Cooper's work on that project, we conclude that he was her "immediate supervisor."

The legislative history confirms our interpretation. Congress enacted section 6751(b) "to prevent IRS agents from threatening unjustified penalties to encourage taxpayers to settle." Chai v. Commissioner, 851 F.3d 190, 219 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42. The Senate Finance Committee stated that the statute would ensure that IRS agents assert penalties "where appropriate" but "not as a bargaining chip" during settlement negotiations. See S. Rept. No. 105-174, at 65 (1998), 1998-3 C.B. 537, 601. Congress evidently concluded that, in the absence of a higher level officer designated by the Secretary, an IRS agent's "immediate supervisor" was in the best position to review the appropriateness of a penalty.

Given this legislative purpose, an agent's "immediate supervisor" is most logically viewed as the person who supervises the agent's substantive work on an examination. That person (after the agent) presumably has the greatest familiarity with the facts and legal issues presented by the case. That person is thus in the best position to supply the approval that Congress believed desirable.[5]

---

[5]This analysis governs in cases where penalties are determined during the examination. Somewhat different (though analogous) considerations may apply where an IRS Chief Counsel attorney asserts a penalty for the first time in litigation. See Chai v. Commissioner, 851 F.3d at 221 n.24 (noting that IRS counsel may assert penalties in an answer or amended answer); Roth v. Commissioner, T.C. Memo. 2017-248, 114 T.C.M. (CCH) 649, 652 (noting that IRS counsel

(continued...)

For this case Mr. Burris was best situated to carry out Congress' mandate. He was the "case manager" and the "issue manager" for the Sand examination, and as such he supervised all aspects of RA Cooper's work on that case from beginning to end. See IRM pt. 4.46.1.1.3.1 and .2 (Dec. 13, 2018). His supervisory role included overseeing "the development of all penalty issues." See id. pt. 4.46.4.11.2(1). Indeed, the IRM provides that, "[f]or LB&I cases, the issue manager must approve penalties in writing" because, "[f]or purposes of IRC 6751(b)(1), * * * [he] is the immediate supervisor." Id. pt. 4.46.4.11.2(3); see id. pt. 4.46.4.10.2(1) and (2) (Mar. 9, 2016) (providing that the "case manager and issue manager must be actively involved with the development of all penalty issues" and that the "case manager and the issue manager must approve * * * [a]ny penalty asserted").

RA Cooper acquired a new supervisory revenue agent (Mr. Wilson) in September 2018, when she was promoted and transferred to a different LB&I team. But the IRS authorized her to continue working with Team 1124 until the Sand examination was finished, and her substantive work in that respect continued to be supervised by Mr. Burris. There is no evidence that Mr. Wilson, as the manager of

---

[5](...continued)
"routinely asserts section 6662 penalties in answers"), aff'd, 922 F.3d 1126 (10th Cir. 2019).

a different team, had any authority to oversee her work on the Sand examination. We accordingly conclude that RA Cooper had no obligation to obtain Mr. Wilson's approval of the penalties she decided to assert.

Petitioner contends that an agent's "immediate supervisor" for section 6751(b)(1) purposes is her direct superior in a hierarchical sense, as shown on an organizational chart. According to petitioner, the "immediate supervisor" is "the person who handles work assignments, performance reviews, leave requests, and similar administrative tasks." But such a formalistic interpretation does not align with the statutory context (penalty approval) or with Congress' intent. Put simply, the person who approves time off is not necessarily the person who should be approving penalty determinations. The person who actually supervises the agent's work during the examination--including "the development of all penalty issues," IRM pt. 4.46.4.11.2(1)--is the person to whom Congress is most logically viewed as having entrusted this responsibility.[6]

Petitioner urges that the statute's "plain text" supports its position, asserting that section 6751(b) "requires approval from the person who supervises the indi-

---

[6]This is not to say that the supervisor, who is acting only in a reviewing capacity, must be as deeply engaged in the case as the agent. See Belair Woods, 154 T.C. at 17 (citing Raifman v. Commissioner, T.C. Memo. 2018-101, 116 T.C.M. (CCH) 13, 28; see also Thompson v. Commissioner, 155 T.C. at 93; Patel v. Commissioner, T.C. Memo. 2020-133.

vidual making the determination, not the person who supervises the conduct of the audit." This argument misses the point. Mr. Burris supervised all of the work that RA Cooper performed during the examination. Thus, he necessarily supervised "the individual making the determination."

Finally, petitioner suggests that Mr. Wilson must have been RA Cooper's immediate supervisor because she asked him to sign (and he did sign) the Supplemental Civil Penalty Approval Form. We disagree. That form lists the "examiner" as RA Cooper and the "examiner's immediate supervisor" as "Gregory P. Burris / William H. Wilson." And the form includes three signature lines: one for the "examiner" (where RA Cooper signed); one for the "case & issue supervisor" (where Mr. Burris signed); and one for the "immediate supervisor" (where Mr. Wilson signed). Because of the ever-changing landscape created by evolving judicial interpretations of this ambiguous statute, RA Cooper evidently took a belt-and-suspenders approach. We decline to penalize her for doing more than the statute required.

To reflect the foregoing,

An order will be issued denying petitioner's motion for partial summary judgment and granting respondent's cross-motion.