In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 26-1864

TUSHAWN CRAIG, *et al.*,

*Plaintiffs-Appellees*,

*v.*

CITY OF RICHMOND, INDIANA,

*Defendant-Appellant*.

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:25-cv-00782-MPB-MJD — **Matthew P. Brookman**, *Judge*.

———————————

ARGUED JUNE 3, 2026 — DECIDED JUNE 18, 2026

———————————

Before BRENNAN, *Chief Judge*, and EASTERBROOK and
SCUDDER, *Circuit Judges*.

BRENNAN, *Chief Judge*. An industrial facility caught fire in
Richmond, Indiana and burned for at least seven days. Seeking relief for related injuries and damages, 150 plaintiffs sued
in Indiana state court. The defendants that owned the properties on which the facility stood removed the case to federal
court as a "mass action" under the Class Action Fairness Act
of 2005. *See* 28 U.S.C. §§ 1332(d)(11), 1453(b). Uncertain of

subject matter jurisdiction, the district court ordered briefing as to whether this case falls within the local event or occurrence exception of the Act. *See id.* § 1332(d)(11)(B)(ii)(I). The court concluded the case did and remanded it to state court.

The City of Richmond asked this court for permission to appeal that decision under 28 U.S.C. § 1453(c). We accepted its petition to address the nature and meaning of the local event or occurrence exception as a matter of first impression in this circuit. We hold that the exception is jurisdictional, and that all claims in this action arise from the local fire event, so we affirm.

## I

In April 2023, an industrial facility in Richmond, Indiana went up in flames. Local officials ordered nearby residents to evacuate their homes for several days. The fire burned for more than a week before it was extinguished. Though contained, the fire allegedly emitted noxious gases and hazardous particulates that spread across hundreds of properties.

The incinerated facility stood on three properties. Two were purchased by the City of Richmond in 2021. The third was jointly owned by My-Way Trading, Inc., Cornerstone Trading Group, LLC, and Cornerstone's president Seth Smith.

In April 2025, 150 plaintiffs sued the property owners in Wayne County, Indiana Circuit Court. The complaint alleged that the private defendants' ongoing failure to maintain their properties, and the City's failure to remediate these hazardous conditions after its 2021 purchase, set in motion a "chain of events" that caused the fire. Under theories of strict liability, negligence, and negligence per se, individual plaintiffs

sought compensatory damages for personal and economic injuries resulting from the fire. Similarly, commercial plaintiffs pursued damages for lost profits and property damage. In their complaint, plaintiffs also requested punitive damages, and advanced additional legal theories of nuisance, trespass, battery, negligent and intentional infliction of emotional distress, and diminution of property.

The defendants removed the case to federal court as a "mass action" under the Class Action Fairness Act. In § 1332(d)(2), Congress grants original jurisdiction over any civil action that is a class action in which minimal diversity of citizenship exists and the amount in controversy exceeds $5 million. A "mass action shall be deemed to be a class action removable under [§ 1332(d)(2)–(10)] if it otherwise meets the provisions of those paragraphs." § 1332(d)(11)(A). A "mass action" is any civil action in which "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact … ." *Id.* § 1332(d)(11)(B)(i). But a "mass action" shall not include civil actions that satisfy any of four exceptions listed in § 1332(d)(11)(B)(ii). To show that removal was proper under the Act, the defendants pleaded the appropriate citizenship and amount in controversy. They also maintained that the requirements for a mass action were met, and that this case did not fall within any of the exceptions.

Two months later, the magistrate judge *sua sponte* ordered the parties to show cause why one of the exceptions to mass actions—the local event or occurrence exception—did or did not apply. *Id.* § 1332(d)(11)(B)(ii)(I). That exception excludes from the term "mass action" any civil action in which "all of the claims in the action arise from an event or occurrence in

the State in which the action was filed, and that allegedly re-sulted in injuries in that State or in States contiguous to that State." *Id.*

After considering the parties' arguments, the magistrate judge concluded that this exception applied and recommended remanding the case to state court. The district judge agreed. Because the local event or occurrence exception to mass actions is jurisdictional, the district court explained, it can be raised at any point, even absent a timely motion to remand. And because all claims in the action arise from the "single, injury-causing event" of the fire, the local event or occurrence exception applied. The district court thus ordered the case remanded for lack of subject matter jurisdiction.

This court accepted defendants' interlocutory appeal under 28 U.S.C. § 1453(c). Legal questions of subject matter jurisdiction are reviewed de novo. *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 854 (7th Cir. 2022).

## II

The first question we consider is whether the local event or occurrence exception, § 1332(d)(11)(B)(ii)(I), is jurisdictional.

## A

The defendants argue this exception is not jurisdictional, so the district court should not have raised the issue *sua sponte*. They contend the plaintiffs would have had to raise it in a motion to remand within 30 days of removal. *See* 28 U.S.C. § 1447(c). Though "[t]he party asserting federal jurisdiction has the burden of showing that CAFA's requirements are satisfied," *Schutte*, 28 F.4th at 854, the burden shifts to plaintiffs to find an express exception to jurisdiction. *See Hart v. FedEx*

*Ground Package Sys. Inc.*, 457 F.3d 675, 679–81 (7th Cir. 2006) (plaintiffs must raise non-jurisdictional exceptions in § 1332(d)(3), (4)). So, if the local event or occurrence exception is non-jurisdictional, ignoring this burden-shifting framework could run afoul of the party presentation principle and rules of waiver. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (party presentation); *see also Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 636 F.3d 971, 973–76 (8th Cir. 2011) (waiver and timeliness of motions to remand under 28 U.S.C. § 1447(c)).

If the local event or occurrence exception is jurisdictional, though, it may be raised at any time to ensure that subject matter jurisdiction is proper. *See Cont'l Indem. Co. v. BII, Inc.*, 104 F.4th 630, 636 (7th Cir. 2024); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). These ground rules apply to the Class Action Fairness Act too. *Hart*, 457 F.3d at 679–81. Other circuits have assumed the local event or occurrence exception is jurisdictional, although in those cases the question was not presented as it is here by a *sua sponte* order. *See, e.g.*, *Spencer v. Specialty Foundry Prods. Inc.*, 953 F.3d 735, 738 (11th Cir. 2020); *Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405, 407–09 (5th Cir. 2014).

**B**

The plain meaning and structure of § 1332 show that the local event or occurrence exception is jurisdictional.

Section 1332(a)(1) provides original jurisdiction of all civil actions where the matter in controversy exceeds $75,000 per person and there is complete diversity of citizenship. The Class Action Fairness Act relaxes the requirements of that

statute by granting jurisdiction in § 1332(d)(2) to class actions if the stakes exceed $5 million and there is minimal diversity.

The Act also includes § 1332(d)(11). Subparagraph (11)(A) states a "mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs." Subparagraph (11)(B) clarifies what a mass action is and is not:

> (B)(i) As used in subparagraph (A), the term "mass action" *means* …

> (B)(ii) As used in subparagraph (A), the term "mass action" *shall not include* …

28 U.S.C. § 1332(d)(11)(B)(i), (ii) (emphases added). Subparagraph (11)(B)(ii) then lists a series of exceptions which exclude certain actions from the definition of the term "mass action." One of those is the local event or occurrence exception, § 1332(d)(11)(B)(ii)(I), at issue here.

In this way, the exceptions affect jurisdiction. Only civil actions that fall within the definition of a mass action are deemed to be class actions. And only class actions are granted original jurisdiction under § 1332(d)(2). So, any action that does not meet the definition of a mass action is not a removable class action and must meet the requirements of § 1332(a)(1). Because the exceptions are part of the definition of mass action, they affect subject matter jurisdiction through their link back to the requirements in §§ 1332(d)(2) and 1332(a)(1).

The defendants disagree. They offer comparisons to the exceptions in § 1332(d)(3) (discretionary exception) and (d)(4) (local controversy and home-state exceptions). In *Hart*, this court reasoned that those two exceptions are located in

different paragraphs from the jurisdictional grant in § 1332(d)(2). 457 F.3d at 681. They also presuppose jurisdiction before permitting or requiring a court to decline from exercising it, akin to abstention. *Id.* This court thus held that those two exceptions were not jurisdictional.

But the reasoning in *Hart* does not apply to the four exceptions in § 1332(d)(11)(B)(ii). Although these four exceptions also appear in a different paragraph from the jurisdictional grant in § 1332(d)(2), these exceptions link back to that grant. And rather than presupposing jurisdiction, like § 1332(d)(3) and (d)(4), the four exceptions clarify the term "mass action" for the purpose of determining jurisdiction.

Because the local event or occurrence exception, § 1332(d)(11)(B)(ii)(I), affects the definition of a removable "mass action," we hold that it is jurisdictional. As with all issues of subject matter jurisdiction, the magistrate judge was free to raise it at any point. Whether the exception applies in this case is the next question.

### III

The parties do not dispute that this action satisfies § 1332(d)(2)–(10), and we see no jurisdictional problems there. *See* 28 U.S.C. § 1332(d)(11)(A). They also do not dispute that the action satisfies the positive requirements for mass actions, § 1332(d)(11)(B)(i), and that no other exceptions apply, § 1332(d)(11)(B)(ii), with which we also agree. What is disputed is whether the local event or occurrence exception. § 1332(d)(11)(B)(ii)(I), applies. The meaning of that exception is a question of first impression for this circuit. If the local event or occurrence exception applies, subject matter jurisdiction is lacking and this case belongs in state court. If the

exception does not apply, we would reverse and vacate the
remand order.

## A

As with all questions of statutory interpretation, we start
with the text. *Dec v. Mullin*, 171 F.4th 940, 944 (7th Cir. 2026).
Words left undefined by Congress take their "ordinary, con-
temporary, common meaning." *Sandifer v. U.S. Steel Corp.*, 571
U.S. 220, 227 (2014). Yet if Congress borrows words with well-
established legal meanings, then it "presumably knows and
adopts the cluster of ideas that were attached to each bor-
rowed word." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025); *see also*
*United States v. Hansen*, 599 U.S. 762, 774 (2023). For words that
take both common and legal meanings, context is a "good
clue" to the more likely meaning. *Hansen*, 599 U.S. at 774–75;
*see also* John O. McGinnis & Michael B. Rappaport, *The Consti-
tution and the Language of the Law*, 59 WM. & MARY L. REV. 1321,
1356–62, 1366–68 (2018). After all, words must be read "in
their context and with a view to their place in the overall stat-
utory scheme." *EPA v. Calumet Shreveport Refin., L.L.C.*, 605
U.S. 627, 643 (2025). If the meaning of the text is plain and un-
ambiguous, then it should be applied without recourse to leg-
islative history. *See Azar v. Allina Health Servs.*, 587 U.S. 566,
579 (2019).

The pertinent statutory language reads: "[T]he term 'mass
action' shall not include any civil action in which … all of the
claims in the action arise from an event or occurrence in the
State in which the action was filed, and that allegedly resulted
in injuries in that State or in States contiguous to that State."
28 U.S.C. § 1332(d)(11)(B)(ii)(I). There is no dispute that the
fire occurred in Indiana where the civil action was filed and
allegedly resulted in injuries in Indiana or the contiguous

state of Ohio.[1] What is left to decide is whether the fire is "an event or occurrence," and if so, whether "all of the claims in the action arise from" it.

The Class Action Fairness Act does not define the phrase "event or occurrence." Both words have ordinary and legal uses. Because the local event or occurrence exception uses them in the context of civil actions and tort-based claims, we look to their related legal use. *Black's Law Dictionary*, citing the use of "occurrence" in the setting of tort and insurance liability, defines that term as "an accident, event, or continuing condition that results in personal injury or property damage." *Occurrence*, BLACK'S LAW DICTIONARY (8th ed. 2004) (quotation modified). This fits well with the use of the words in the exception, which also portrays the "event or occurrence" as that which "results" in the alleged injuries.

So, an "event or occurrence" is some incident or happening that causes injury. It could be a sudden and unexpected "accident." But it is not limited to such things; the words "event" and "continuing condition" appear in the definition too. That the word "event" appears within the definition of "occurrence" in *Black's Law Dictionary* suggests the words are synonyms, or that one is a subset of the other. Popular dictionaries suggest their interchangeability as well. *See, e.g., Event*, AMERICAN HERITAGE DICTIONARY (4th ed. 2006) (''A significant occurrence or happening.''). And the inclusion of a "continuing condition" allows that an "event or occurrence" need not be fixed at a discrete moment in time, but may be a source of injuries that persist over some indefinite period of

---

[1] The City of Richmond is located on the Indiana–Ohio border in east central Wayne County, Indiana.

time. In short, the definition is broad and somewhat flexible, but how broad and flexible need not be decided here. A fire that burns for more than one week and results in the injuries and damages alleged here is "an event or occurrence."

In this way, "all of the claims in the action" may be fairly said to "arise" from the fire event. In tort, a claim arises from an injury. Where there is no injury, there is no tort. *See* RESTATEMENT (SECOND) OF TORTS § 7 (A.L.I. 1965). The complaint here alleges no injuries or damages that occurred before the fire event.[2] And all injuries and damages allegedly resulted from the fire. All claims in the action, assuming tortious conduct and legal causation, therefore "arise" from the fire. *Id.* This is true regardless of whether "claim" refers to a formal "claim of relief" in the pleading, *see* FED. R. CIV. P. 8, or a free-standing set of operative facts that entitle the plaintiffs to relief. *See* 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1653 (5th ed. 2025). Either applies here.

**B**

The circuits appear to split three ways when defining an "event or occurrence." The resolution of this case is consistent with all three approaches, but not all three read the exception for its plain meaning.

The broadest definition of "event or occurrence" came first in the Third Circuit's opinion, *Abraham v. St. Croix Renaissance Group, L.L.L.P*, 719 F.3d 270 (3d Cir. 2013). For thirty years, a refinery had generated hazardous substances that were

---

[2] The defendants argue that a nuisance claim may have arisen before the fire, based on the failure to maintain the conditions on the properties. But the complaint alleges the nuisance arose from the fire itself.

buried on site in mounds of "red mud." *Id.* at 272–73. Erosion and wind dispersion resulted in an "ongoing emission" of particulates, which spread to nearby homes. *Id.* at 273, 279–80. Plaintiffs sued, alleging the owner knew of and failed to remediate these conditions when it bought the site ten years prior. *Id.* at 273. Upon removal to federal court, the Third Circuit observed that the common meaning of "event" is "not always confined to a discrete happening that occurs over a short time span such as a fire." *Id.* at 274. For example, the "Civil War" is a "defining event in American history, even though it took place over a four-year period and involved many battles." *Id.* at 277. So, the court concluded that an "event or occurrence" can be "a continuing set of circumstances," or "circumstances that share some commonality and persist over a period of time." *Id.* Because this flexible sense of the words included "the ongoing emission" of hazardous particulates over a decade, the court held that the exception applied. *Id.* at 279–80.

A year later, the Fifth Circuit praised *Abraham* in *Rainbow Gun Club v. Denbury Onshore, L.L.C.*, 760 F.3d 405 (5th Cir. 2014). But that court slightly narrowed the definition of an "event or occurrence." There, the owners of a well permitted a lessee to drill under various lease agreements. *Id.* at 407. At some point, the well failed. *Id.* The owners sued, alleging the lessee breached its duty to act as a reasonable and prudent operator. *Id.* Relying on *Black's Law Dictionary* and legislative history, the court concluded that an "event or occurrence" can include "a pattern of conduct" that is "contextually connected" or "consistent in leading to a single focused event that culminates in the basis of the asserted liability." *Id.* at 409–13. Because the failure of the well was a "single focused event"

culminating from contextually connected conduct, the exception applied. *Id.* at 413–14.

The narrowest definition of "event or occurrence" came a year later in the Ninth Circuit's opinion in *Allen v. Boeing Co.*, 784 F.3d 625 (9th Cir. 2015). The plaintiffs sued Boeing Company and Landau Associates, alleging that for forty years Boeing released toxins into the groundwater, and that for over a decade Landau was negligent in investigating and remediating this pollution. *Id.* at 627. Based on popular dictionaries and immediate statutory context, the court expressly rejected *Abraham*'s approach—an "event or occurrence" refers to a "singular happening" at a moment in time, like a chemical spill, but not to an ongoing condition or "something like the Civil War." *Id.* at 630–31. And "even accepting … ambigu[ity]," the court felt "constrained" to adopt this narrow construction by the statutory structure, legislative history, a rule of strict interpretation favoring federal jurisdiction, and precedent. *Id.* at 631–33 (citing *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 665–66 (9th Cir. 2012) (stating in dicta that "widespread fraud in thousands of borrower interactions" is not a "*single* event or occurrence")). The local event or occurrence exception therefore did not apply, as continuous pollution is not a single happening fixed to a moment in time. *Id.* at 633–34.

Some years later in *Spencer v. Specialty Foundry Products Inc.*, the Eleventh Circuit adopted the Fifth Circuit's approach. 953 F.3d 735 (11th Cir. 2020). There, 230 plaintiffs sued ten defendants, alleging their separate products exposed them to hazardous and harmful substances while working at a foundry. *Id.* at 737–38. But not all plaintiffs worked at the foundry at the same time. Nor did all of them use the same

products for the same jobs in the same parts of the foundry. *Id.* Though the claims shared commonality, which might be enough under *Abraham*, the court held in *Spencer* that they were too loosely related to arise from a single "event or occurrence." *Id.* at 740, 742–43.

In reaching this conclusion, the Eleventh Circuit relied on the ordinary meaning of "event" and "occurrence." As an illustration, the court explained that these words can refer to a single baseball game or several related games, like the World Series. But they cannot refer to a single game between the Braves and the Mets in one season and a game between the Braves and the Marlins in another "simply because both games involve the same team playing the same sport." *Id.* at 741. The court consequently adopted the approach of the Fifth Circuit: the "local event exception applies to a singular harm-causing moment in time, as well as a contextually connected series of incidents that culminates in that harm-causing event or occurrence." *Id.* at 743. The claims in *Spencer* arose at different times and from different causes, so the exception did not apply.

The fire in this case satisfies the definitions proposed in all four circuits. The fire would qualify as an "event or occurrence" in the Third Circuit. It was more fixed to a moment in time than the ongoing emissions in *Abraham*. The fire also would satisfy the approach adopted by the Fifth and Eleventh Circuits. Like the failure of the well in *Rainbow Gun Club*, but unlike the separate injuries across time in *Spencer*, the fire is a single injury-causing event that occurred at some moment in time and culminated from a series of contextually connected circumstances. The fire satisfies even the Ninth Circuit's

narrowest of definitions. The fire is a single happening at a moment in time, just like the chemical spill example in *Allen*.

So, the resolution of this case does not implicate the three-way circuit split as to how to define the words "event or occurrence." Their meaning is plain as applied here.

## C

The defendants raise several arguments in favor of federal jurisdiction. To start, they advocate for *Allen*'s view that "an event or occurrence" is a "singular happening" fixed to a moment in time. But that definition is not dispositive. Under *Allen*'s narrow approach, the fire is still an "event or occurrence." The statutory structure and legislative history arguments that defendants borrow from *Allen* for support therefore fall by the wayside. *See id.* at 631–33.

Next, the defendants argue that the claims arise from multiple events or occurrences—that is, not just from the fire, but also from multiple tortious acts over the years that caused the fire. For support, the defendants observe in the plaintiffs' complaint a series of incidents showing that the private defendants allegedly failed to maintain their properties. These include: private complaints about the condition of the properties dating back as far as 2005; citations for fire and building code violations in 2018; an official finding that the properties were unsafe in 2019; official concerns that a "fire event" could occur requiring mass evacuation; and repair-demolish-vacate orders for all three properties. To defendants, each of these is a separate event or occurrence, so the exception does not apply.

The Fifth Circuit correctly disposed of a similar argument in *Rainbow Gun Club*. There, the plaintiffs alleged "five

separate incidents of negligence" that resulted in the failure of the well. 760 F.3d at 412–13. The court rejected the conclusion that these were separate events or occurrences from which the plaintiffs' claims arose. *Id.* Rather, they were collective related acts that culminated in the failure of the well—all of which, in the court's view, was a single "event or occurrence" for purposes of the exception. *Id.* We agree with the distinction between the injury-causing event and its underlying causes.

Claims do not arise from tortious conduct in the abstract. Claims arise from an injury-causing event. Where there is no injury, there is no claim. So, all claims in this case arise from the fire because the fire caused the injuries. Though the fire's underlying causes were pleaded to prove the plaintiffs' theories of relief, they are not separate events or occurrences for purposes of this statutory exception.

No matter, the defendants continue, because the City and the private defendants engaged in different activities that caused the fire. On one hand, the private defendants accumulated hazardous materials on their properties. On the other, the City failed to remediate these conditions once they purchased the properties in 2021. In the defendants' view, when different defendants carry out independent tortious activities, the claims arise from multiple events or occurrences, so the exception cannot apply.

The Ninth Circuit reached a similar conclusion in *Allen*, 784 F.3d at 630, 633–34. Reasoning in the alternative, the court concluded that the exception would not apply to the plaintiffs' action even under the Fifth Circuit's broader definition in *Rainbow Gun Club*. If the plaintiffs had sued only Boeing, the court explained, then the ongoing pollution by Boeing

might be a single "event or occurrence" under that approach. But because the plaintiffs sued both Boeing and Landau—one for polluting, the other for failing to investigate and remediate that pollution—this was not a single event or occurrence. *Id.* at 633–34. The defendants submit the same is true here: the private defendants failed to maintain the properties and the City failed to remediate these conditions. Because these are two independent activities, in defendants' view, there cannot be a single event or occurrence.

We disagree. As the Eleventh Circuit observed, that multiple defendants "acted separately to generate the alleged harm is not dispositive of the local event exception." *Spencer*, 953 F.3d at 743. There, the court resolved the case not based on the number of defendants, but on the fact that separate injury-causing events occurred at different times. *Id*. at 743–44. With multiple defendants, then, the question is whether they contribute to the same injury-causing event. Here, though the private defendants and the City engaged in distinct activities, they all allegedly caused the fire. And the fire allegedly resulted in the injuries that gave rise to all the claims in the complaint. The fire thus remains a single "event or occurrence."

## IV

The local event or occurrence exception at 28 U.S.C. § 1332(d)(11)(B)(ii)(I) is jurisdictional. As with all questions of subject matter jurisdiction, the district court did not err by raising it *sua sponte*.

Because the fire is "an event or occurrence" from which all claims in the action arose, the local event or occurrence exception applies. Removal to federal court therefore was not proper under the Class Action Fairness Act. The district

court's order, which remanded the case to state court for lack of subject matter jurisdiction, is AFFIRMED.